German Security Bank v. Coulter, Auditor.
Louisville City National Bank v. Coulter, Auditor.

CASE 66—ACTION FOR MANDAMUS—JAN. 30.

# German Security Bank v. Coulter, Auditor. Louisville City Nat. Bank v. Coulter, Auditor.

112 577
112 585

112 577
123 42

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

TAXATION—PAYMENT OF TAXES INTO STATE TREASURY—POWER OF STATE AUDITOR TO CORRECT ASSESSMENT—RECOVERY OF TAXES PAID UNDER MISTAKE OF LAW.

Held: 1. The State auditor may be required by mandamus to draw his warrant on the treasury in favor of a bank for an excess of taxes paid by it into the treasury by reason of a mistake as to the rate of taxation upon the amount assessed, but not for an excess of taxes paid by reason of an erroneous assessment; the auditor having no power to correct erroneous assessments.
2. Municipal and executive officers can be required by mandamus to perform only such duties as are imposed upon them by law.
3. Taxes voluntarily paid can not be recovered on the ground that they were not due, where payment, if they had been due, could not have been enforced except by suit.

HELM, BRUCE & HELM, FOR APPELLANTS.

These suits are based on sec. 162 of the Kentucky Statutes, as follows:

"When it shall appear to the auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same."

This statute has no peculiar relation to taxes paid upon lands, as contended by counsel for the Commonwealth, as is perfectly obvious from reading it.

Our view is, that the statute makes it obligatory upon the auditor, to draw his warrant on the treasury, whenever taxes have been paid which were not due to the Commonwealth. The authorities in support of the right to maintain a mandamus, under such circumstances, are very numerous and convincing. We

have not referred to them because this court has recently construed that very statute, and directed a recovery under similar circumstances.     Bank of Commerce v. Stone, 108 Ky., 427; (22 R., 70) (56 S. W., 683.)

The only difference between that case and these cases, is, that in that case there was no contention based on the right of the State to tax nontaxable securities, but if our present Constitution is right, the taxes that were based on non-taxable securities are no more due to the State than was the excess between the amount paid under the Hewitt law, and the amount which would have been paid under the general law. In both cases the controversy turned on the single question of whether the taxes which were paid in, were due the State. If not, then the action is maintainable.

The suit in this case is based, solely, upon the proposition that there was no legal right to collect the taxes.     It is not a suit to correct an assessment in the mere valuation.     The right of action turns upon the statute, and the only thing to be inquired into, is, ought the non-taxable securities have been deducted in arriving at the value of the assets to be taxed.     In every case where the tax is upon the property, and not upon the shares of stock, under all the authorities wherever the item of property taxed is not taxable, either under the Federal or State laws, the valuation at which that property is carried on the books of the concern, and enters into and forms a part of the capital, should be deducted from the aggregate value of all the assets, before the tax is applied.

We are proceeding upon the express provision of the statute declaring that when a corporation pays its taxes, that the holder of the shares of stock shall not be liable on those shares.     Now in this instance the German Security Bank holds stock of another corporation.     The allegation, which is admitted, is, that the other corporation has paid its taxes on its capital stock, and therefore, as a shareholder we say, that so much of our capital stock as is invested in those shares should be exempt from taxation.     The statutes upon which we base this claim of exemption, is found in the third article, sections 4085 and 4088 of the Kentucky Statutes.

As to the Louisville City Nat. Bank., its non-taxable securities are government bonds which are made non-taxable by the Federal statute.

Counsel admits that if the Louisville City Nat. Bank had sought to recover the whole amount paid by it, the State would have had no defense, because, under the peculiar circumstances

Vol. 112].　　　JANUARY TERM, 1902.　　　579

German Security Bank v. Coulter, Auditor.
Louisville City National Bank v. Coulter, Auditor.

of the case, the bank having failed, and its shares of stock worth nothing, it was willing simply to sue for the difference between what was paid under the Hewitt bill and what it would have paid under the general law, deducting the non-taxable securities; that it has made some concession which defeats its right of action altogether. We confess it is very difficult to understand such logic.

In conclusion we insist that if, under the statutes of this State, the tax imposed rests upon the property of the corporation and not upon the shares of stock, these suits are well founded. If the tax rests upon the shares of stock and not upon the property of the corporation, it necessarily follows, under the authorities, that these suits are not well founded.

ROBT. J. BRECKINRIDGE AND JOHN W. RAY, FOR APPELLEE.

(No briefs.)

OPINION OF THE COURT BY JUDGE PAYNTER. AFFIRMING.

The appellant seeks to recover a part of the taxes which it paid the State of Kentucky for the years 1897 and 1898. It paid $1,786.99 in 1897, and $1,773.52 for the year of 1898. These sums were paid under and in accordance with the provisions of the Hewitt law, which was enacted in 1886 General Statutes, 1888, c. 92). It is averred by the appellant that it regularly made its reports to the auditor of public accounts, and paid the taxes under that law up to and including the year 1898; that by the terms of that law the plaintiff was required to pay 75 cents on each share of its capital stock, equal to $100, and in addition thereto to pay the same rate on each $100 of so much of its surplus, undivided surplus, and undivided profits as exceeded an amount equal to 10 per cent. of its capital stock, and also paid the same rate of taxation on its real estate that was paid by other persons on like property; that by the terms of the Hewitt law the amount so paid was in full of all State, county and municipal taxes, except that the building

in which the bank did business was taxed for municipal purposes. From the averments of the petition it appears that the question arose whether or not banks situated like the appellant should pay taxes under the Hewitt law, or under the general revenue law of 1892 (Kentucky Statutes, 1894, c. 108). In order to settle it, a part of the banks brought suit, with a view of testing the question. Three banks were chosen, each to represent a class, for the purpose indicated. The suits were filed, and finally reached this court for the review of the judgments rendered in the court below. This court held (June 1, 1895) that the banks which accepted the provisions of the Hewitt law should pay taxes under it, and were not affected by the general revenue law of 1892. In the spring of 1897 the question again arose in this court, and the court overruled its former opinion, and held that the banks did not have an irrevocable contract under the Hewitt law; that they were compelled to pay the State the same rate of taxes paid by other taxpayers, besides paying county and municipal taxes at the same rate imposed upon other taxpayers. Subsequently, in the year of 1898, certain banks filed suits in the United States circuit court to enjoin the collection of taxes, except such as were imposed under the Hewitt law. That court passed upon the question in June, 1898 (88 Fed., 383), and held that all the banks which were parties to the proceedings in which the 1895 opinion of this court was delivered were entitled thereto under the terms of the Hewitt law, by the reason of the doctrine of *res judicata*. For the same reason they held that the banks which were not parties to that proceeding, but had agreed with the attorney for the city of Louisville to abide the result, were required to pay under the Hewitt law. That

case was appealed to the supreme court of the United States (21 Sup. Ct., 753), which, like the circuit court of appeals, held that the banks which accepted the provisions of the Hewitt law did not have an irrevocable contract, but that the banks which were parties to the proceeding in which this court rendered its opinion in 1895 were only required to pay taxes under the Hewitt law, but that the banks which were not parties to that proceeding (appellant being one of them) were not entitled to the benefit of the provisions of the Hewitt law, as they were not protected by the doctrine of *res judicata*. The tax which the plaintiff alleged to have paid was an assessment under the Hewitt law, which was on the shares of the capital stock of the bank, on surplus and certain undivided profits, and its real estate. These taxes were voluntarily paid. In fact, the appellant insisted that it was entitled to pay under the Hewitt law. The rate of taxation levied for State purposes in the years in question was $52\frac{1}{2}$ cents on each \$100 of the assessed value of property. The State received on the assessed value in excess of what it should have collected from appellant the difference between $52\frac{1}{2}$ cents and 75 cents on each \$100 of the assessment. The plaintiff avers that if it had paid its taxes for the years of 1897 and 1898 to the State under the revenue act of 1892, it would have been bound to pay and would have paid on the aggregate of its capital and surplus, less the amount of its assets invested in non-taxable securities. This averment is followed by the statement that some of its assets were invested in certain stocks which were not taxable. Therefore it is claimed that assessments were excessive, and that it is entitled to have them corrected, and have the au-

ditor issue his warrant for the excess of taxes paid by rea-
son of the alleged error in the assessments.

From our view of the case, it is not necessary to consider
the question as to whether any authority could have cor-
rected them if the application had been made therefor in
proper time. The auditor makes no question as to the right
of appellant to collect the difference between 52½ and 75
cents paid on each $100 of the value of its property as
ascertained by the assessment under the Hewitt law. The
amount of this difference was not due the State, and there-
fore was paid when not due. This brings the transaction
within the terms of section 162, Kentucky Statutes, ac-
cording to the interpretation in Bank v. Stone, 108 Ky.,
427 (22 R., 70), (56 S. W., 683) and subsequent
cases, which reads as follows: "When it shall ap-
pear to the auditor that money has been paid into
the treasury for taxes when no such taxes were
in fact due, he shall issue his warrant on the treasury for
such money so improperly paid, in behalf of the person
who paid the same. Nothing herein contained shall au-
thorize the issuing of any such warrant in favor of any
person who may have made payment of the revenue tax
due on any tract of land, unless it is manifest that the whole
of the tax due the Commonwealth on such land has been
paid, independent of the mistaken payment, and ought to
be reimbursed." The balance of the claim asserted in this
action does not come within the provisions of the statute,
as will be hereinafter shown. This is not an action against
the State. If it was, it could not be maintained, because
the State has not, by the statute quoted or any other stat-
ute, given consent to be sued. The primary intention of
the statute was to authorize the auditor to refund to

officers who collected taxes due the State, and paid more
into the treasury than was in fact due from them.   It was
not intended to authorize the auditor to correct assessments
made of the property of taxpayers, and refund the amounts
he may determine are due them; for the statutes clearly
provide whose duty it is to make assessments of property,
how they may be corrected, and the time in which it may be
done.   The auditor is not the official upon whom the law
confers such authority.   This court held in the case of Bank
v. Stone that the difference between the 52½ and 75 cent
rate should be refunded by a warrant of the auditor.   The
court did not intend to, nor did it, hold that the auditor
could make any corrections of the assessments, and thus
ascertain what amount of taxes had been paid into the
treasury which was not due, and draw his warrant therefor.
The court did not intend to, nor did it, change the rule of
this court to which we will hereafter refer, which is that
when taxes, the collection of which can only be coerced
by suit, are voluntarily paid, they can not be recovered.
This is a mandamus proceeding to compel the auditor of
public accounts to issue his warrant for the sum alleged
to be due the appellant for an excessive payment of the
taxes which resulted from excessive assessment.   It is not
an action to recover all the taxes paid, but the difference be-
tween the amount collected, and the amount which it
claimed should have been collected on a correct assessment.
This action can not be maintained.   There is a rule of
universal application, that ministerial and executive officers
can only be mandamused to perform duties imposed by
law.   The auditor had no authority when the assessments
were made, or now, to either assess or correct the assess-
ments of banks.   This is the business of the board of val-
uation and assessment.   To show that the auditor is re-

fusing to perform a duty imposed by law, it is essential to show that he both has the authority and that it is his duty to do so. Neither is nor can be shown; hence appellant is not entitled to a mandamus.

The appellant concedes that its property was assessed, and the right of the authority which made the assessment to do so is not questioned. The proper inference to be drawn from the petition is that the appellant claimed the right to have, and did insist on, the assessments being made as they were made. On these assessments, the appellant voluntarily paid the taxes in question. The payment of the taxes assessed could not have been enforced, except by suit. When such taxes are voluntarily paid, then, under the adjudications of the court, an action to recover them can not be maintained. Louisville & Nashville R. Co. v. Hopkins Co., 87 Ky., 605 (10 R., 806, 9 S. W., 497) : Same v. Com., 89 Ky., 539 (11 R., 734) (12 S. W., 1064). The rule is otherwise when the payment of the taxes can be coerced by summary levy and sale of property by the collecting officer.

The judgment is affirmed.

Judge Paynter delivered a separate opinion in the case of Louisville City National Bank v. Coulter, Auditor, affirming: -

This is not an action against the State to recover taxes which have been paid into the treasury. If it was, it could not be maintained as the State has never given consent to be sued. It is not an action to restrain officers of the State from collecting taxes under an illegal improper or illegal assessment. It is an action against the auditor for a mandamus to compel him to issue his warrant for taxes claimed to have been paid in consequence of an illegal assessment. First, there is no law in this State authorizing the auditor to correct the assessment; second, there is no

law authorizing the auditor to refund amount claimed to have been paid on an illegal assessment; third, the auditor can not be compelled by a mandamus to do an act not imposed by law. Again, if it were an action to recover taxes, and the State could be sued, it could not be maintained because it was voluntarily paid, and, under the well-settled rule of this court, taxes so paid can not be recovered. An opinion was delivered by this court to-day in Bank v. Coulter, 112 Ky., 579 (23 R., 1888) 66 'S. W., 425, involving substantially the same question that is before us in this case. The court in that case said: "From our view of the case, it is not necessary to consider the question as to whether there was an error in the assessments, or the question whether any authority could have corrected them if the application had been made therefor in proper time. The auditor makes no question as to the right of appellant to collect the difference between 52½ and 75 cents paid on each hundred dollars of the value of its property, as ascertained by the assessment under the Hewitt law. The amount of this difference was not due the State; therefore was paid when not due. This brings the transaction within the terms of section 162, Kentucky Statutes, according to interpretation in Bank v. Stone 108 Ky., 427 (22 R., 70), (56 S. W., 683) and subsequent cases, which reads as follows: 'When it shall appear to the auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same. Nothing herein contained shall authorize the issuing of any such warrant in favor of any person who may have made payment of the revenue tax due on any tract of land, unless it is manifest that the

whole of the tax due the Commonwealth on such land has been paid, independent of the mistaken payment, and ought to be reimbursed.' The balance of the claim asserted in this action does not come within the provisions of the statute, as will be hereinafter shown. This is not an action against the State. If it was, it could not be maintained, because the State has not, by the statute quoted, or any other statute, given consent to be sued. The primary intention of the statute was to authorize the auditor to refund to officers who collected taxes due the State, and paid more into the treasury than was in fact due from them. It was not intended to authorize the auditor to correct assessments made of the property of taxpayers, and refund the amounts he may determine are due them; for the statutes clearly provide whose duty it is to make assessments of property, how they may be corrected, and the time in which it may be done. The auditor is not the official upon whom the law confers such authority. This court held in the case of Bank v. Stone that the difference between 52½ and 75 cent rate should be refunded by a warrant of the auditor. The court did not intend to, nor did it, hold that the auditor could make any corrections of the assessments, and thus ascertain what amount of taxes had been paid into the treasury which was not due, and draw his warrant therefor. The court did not intend to, nor did it, change the rule of this court, to which we will hereafter refer, which is, when taxes, the collection of which can only be coerced by suit, are voluntarily paid, they can not be recovered. This is a mandamus proceeding to compel the auditor of public accounts to issue his warrant for the sum alleged to be due the appellant for an excessive payment of the taxes which resulted from excessive assessment. It is not an action to recover all the taxes paid, but the differ-

ence between the amount collected and the amount which it claimed should have been collected on a correct assess- ment. This action can not be maintained. There is a rule of universal application, that ministerial and executive officers can only be mandamused to perform duties imposed by law. The auditor had no authority when the assess- ments were made, or now, to either assess or correct the assessments of banks. This is the business of the board of valuation and assessment. To show that the auditor is refusing to perform a duty imposed by law, it is essen- tial to show that he both has the authority, and that it is his duty to do so. Neither is nor can be shown; hence appel- lant is not entitled to a mandamus. The appellant concedes that its property was assessed, and the right of the au- thority which made the assessment to do so is not ques- tioned. The proper inference to be drawn from the peti- tion is that the appellant claimed the right to have and did insist on the assessments being made as they were made. On these assessments the appellant voluntarily paid the taxes in question. The payment of the taxes as- sessed could not have been enforced except by suit. When such taxes are voluntarily paid, then, under the adjudica- tions of the court, an action to recover them can not be maintained. Louisville & Nashville R. Co. v. Hopkins Co., 87 Ky., 605 (10 R., 806, 9 S. W., 497) : Same v. Com., 89 Ky., 539 (12 S. W., 1064.) The rule is otherwise when the pay- ment of the taxes can be coerced by summary levy and sale of property by the collecting officer." It will be observed in this, as in the case from which we have quoted, the lower court ordered the auditor to refund the amount of the dif- ference between 52½ and 75 cent rate, and from that or- der no appeal was prosecuted.

The judgment is affirmed.