## Craig, Auditor Public Accounts v. Renaker.

(Decided December 21, 1923.)

### Appeal from Franklin Circuit Court.

1. Intoxicating Liquors—Statute Requiring License Fee Repealed by Prohibition Act.—Acts 1920, chapter 81, and Acts 1922, chapter 33, prohibiting sales of liquor except for specified purposes, repealed Kentucky Statutes, section 4224, requiring a license to be obtained by druggists for selling spirituous and vinous liquors.

2. Mandamus—License Fee Paid by Mistake Recoverable in Mandamus.—As Kentucky Statutes, section 4224, imposing license fee on druggists for selling intoxicating liquors, was repealed by Acts 1920, chapter 81, and Acts 1922, chapter 33, fees paid by a druggist by mistake should be refunded, and upon auditor's failure to refund druggist was entitled to mandamus under Kentucky Statutes, section 162, requiring issuance of warrant for refund.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellant.

HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The principal question on this appeal is whether the statute requiring a license fee of druggists for selling spirituous and vinous liquors has been repealed by the prohibition acts of 1920 and 1922.

The question arises in the following way: Renaker, a druggist, who had complied with all the provisions of law necessary to enable him to sell whiskey for medicinal purposes, and had obtained a permit to do so, was required by the state authorities to obtain a license for which he paid the necessary fee for two years. Proceeding under section 162, Kentucky Statutes, he brought this suit for a mandamus requiring the auditor to refund the money on the ground that the statute imposing the fees

had been repealed, and that the fees were illegally collected and paid by mistake. The auditor having declined to plead further after his demurrer to the petition was overruled, judgment was rendered in favor of Renaker, and the auditor appeals.

Under our statutes licenses to sell by retail spirituous, vinous or malt liquors are granted by the county court, subject to certain requirements as to notice, unless the majority of legal voters in the neighborhood protest against the application, or the applicant be a person of bad character or one who does not keep an orderly, law-abiding house. Section 4203, Kentucky Statutes, 1915. Licenses to merchants, druggists or distillers shall be granted only upon satisfactory evidence that the applicant is in good faith a merchant, druggist or distiller, and has not assumed the name or the business for the purpose of retailing liquors; and such license shall only authorize the person to sell the liquor named in the license in quantities not less than a quart, and to be taken off and not drunk on the premises where sold, or adjacent thereto, except that druggists may retail in quantities less than a quart for medicinal purposes only on the prescription of a regular practicing physician. Section 4205, Kentucky Statutes, 1915. It is provided in section 4224, Kentucky Statutes, 1915, that before engaging in any occupation or selling any article named in that subdivision, the person desiring to do so shall procure a license and pay the tax thereon as thereafter indicated. The section then authorizes the granting of licenses to sell intoxicating liquors upon the payment of certain fees not only to druggists, but to merchants, distillers, retailers, tavern keepers and hotel keepers, the provision with reference to druggists being as follows:

"To persons who are druggists in good faith, to retail spirituous and vinous liquors at the drug stores in quantities not less than a quart, the liquor not to be drunk on the premises or adjacent thereto, and to sell in quantities less than a quart, for medicinal purposes only, on the prescription of a regular practicing physician, one hundred dollars."

The statute concludes with a provision to the effect that any person or corporation who shall "fail to procure" the license as therein required, or who violates any of the provisions thereof, shall, on conviction, be

fined not less than twenty-five or more than one hundred dollars for each offense.

On March 23, 1920, the General Assembly enacted a general prohibition act, Acts 1920, p. 377, for the purpose, as declared in its title, "to prohibit and provide penalties for the manufacture, sale, transportation or other disposition of spirituous, vinous, malt and intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes in the Commonwealth of Kentucky, and to regulate the manufacture, sale and transportation of alcohol for non-beverage purposes thereunder." The act consists of 38 sections and provides numerous regulations for the sale of liquor for medicinal purposes. In many respects it is similar to the Volstead act, and provides that records shall be kept by any person that sells such liquor, showing the amount, kind and quantity of such liquor, and the name and address of the person to whom it may be sold, which shall be open to the inspection of the county attorney. It is provided in section 20 that "physicians may issue and pharmacists may fill prescriptions for intoxicating liquors under the restrictions of the national federal law." Sections 21 to 24, inclusive, prescribe elaborate conditions and restrictions under which prescriptions may be written by physicians and filled by druggists. Among them is a provision that no more than one pint of liquor shall be filled for any person at any time, nor at intervals of less than ten days. In section 35 it is provided that "Nothing in this act shall prevent the manufacture, sale, transportation or delivery of intoxicating liquors by manufacturers, wholesale druggists or retail druggists having permits issued under the regulations provided for the enforcement of the act of congress known as the national prohibition act, or the sale, transportation and delivery by manufacturers or wholesale druggists or retail druggists to other manufacturers, wholesale druggists or to retail druggists; provided, however, that such manufacturers, wholesale druggists and retail druggists have permits to sell or to purchase under the provisions of said national prohibition act, and have complied with all the provisions of this act." Section 36 provides that "all laws or parts of laws in conflict with this act are hereby repealed."

In the month of March, 1922, the legislature enacted an additional prohibition act. Acts 1922, chapter 33, p. 109. Its purpose as declared in its title was "to prohibit the manufacture, sale, transportation, possession, or

other disposition, of spirituous, vinous, malt or intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes." While this act re-enacted many of the provisions of the former act, particularly those material to this controversy, it contains many additional provisions, and concludes as follows: "This act is intended to be a full, and complete law on the subjects covered by same, and it is intended to supersede all other laws of the Commonwealth of Kentucky on said subjects; provided that all offenses committed prior to the passage and effective date of this act shall be prosecuted under the law in force at the time of said violations."

For the purpose of getting the question fairly before us, let us contrast the license statutes and the prohibition acts. The former not only make the failure to procure a license unlawful, but confer on those who procure a license authority to sell intoxicating liquors. In the case of druggists, authority is given not only to sell in quantities not less than quarts, and not to be drunk on the premises, but also to sell in quantities less than quarts for medicinal purposes only, on the prescription of a regular practicing physician. On the other hand, the prohibition acts purport to contain all the law on the subject, and absolutely prohibit the sale of intoxicating liquors except for sacramental, medicinal, scientific or mechanical purposes, and only then under regulations and restrictions, wholly different from those formerly in force. In other words, the license statute deals with a situation where the sale of intoxicating liquors is lawful. The prohibition acts make the sale unlawful except under conditions therein named. To say that under these circumstances the legislature did not intend to put an end to the license system, and institute a new regime wholly inconsistent therewith, is to ignore entirely the purpose of the prohibition acts. We must not overlook the fact that our license statutes contain two features, one prohibitory and the other permissive. The argument that the permissive feature of the license system is repealed, while the prohibitory feature is left in force as "appropriate legislation" is not persuasive when applied to our statutes. It is not to be supposed for one moment that the legislature would have enacted in the first instance, or have left in force, a statute imposing a penalty for a failure to procure a license, and at the same time have denied the right to obtain a license, or have made it unlawful to do the thing authorized by the license. In other words, the pro-

hibitory and permissive features are so inseparably connected that neither can be left in force without the other. We do not regard the case of Vigliotti v. Penn., 258 U. S. 403, 66 L. Ed. 686, as controlling. In the first place there is a wide difference between the repeal of a state license statute by the Volstead act and its repeal by a state prohibition act purporting to be the whole law on the subject. In the next place, the Brooks law (the Penn. statute) was construed as not conferring upon any one the right to a license, and it was held that its prohibitory features were not so dependent upon those respecting license as to be swept away by the Eighteenth Amendment and the Volstead act. Under our statutes, however, an applicant who possesses the necessary qualifications and complies with all the requirements of the statute is entitled to a license. Hodges v. Metcalfe County Court, 76 S. W. 381, and, as pointed out above, the prohibitory and permissive features are so related as to be mutually dependent. It is true that in Commonwealth v. Barbour, 121 Ky. 463, 89 S. W. 479, we held that one who sold intoxicating liquor in a local option district might be prosecuted at the election of the Commonwealth, either under the general law punishing the sale of intoxicating liquors without a license, or under the local option law when put into effect, since, under section 2554, Kentucky Statutes, laws that were not inconsistent with the local option law remained in force. That case, however, is somewhat different from the case under consideration in that it involved the repeal of the general state law by the adoption of a local option law in a particular locality under a statute which did not purport to be the whole law on the subject.

Moreover, it is said in the notes to that case, which is reported in 3 L. R. A. (N. S.) 620, that in sustaining the prosecution under the general liquor law for selling without a license in a local option territory, the case falls "in with the minority rule," and that the weight of authority is to the effect that the general law is suspended, while the local option law is in operation; that one cannot be convicted under the general law for selling intoxicating liquors without a license when the local option law, which prohibits the issuing of licenses, is in force, and in support of this position the following cases are cited: Butler v. State, 25 Fla. 347, 6 So. 67; Stringer v. State, 32 Fla. 283, 13 So. 450; Collins v. State, 114 Ga. 70, 39 S. E. 918; Batty v. State, 114 Ga. 79, 39 S. E. 918; Edwards v. State,

123 Ga. 542, 51 S. E. 630; Norton v. State, 65 Miss. 297, 3 So. 665; State v. Vandenburg (Miss.), 28 So. 835; State v. Bean, 51 Mo. App. 368; Boone v. State, 12 Tex. App. 184; State v. Hanley, 25 Minn. 429. Furthermore, the decision is wholly inconsistent with previous rulings of this court. Thus in Young v. Commonwealth, 14 Bush 161, we held that county courts had no power to grant licenses to retail liquor in any given locality after the local option law had been put into effect by popular vote, and that such licenses were void. In the course of the opinion it was said:

"But we are of the opinion that in localities where the people have voted against the sale of liquor the act becomes operative as a whole, and suspends *pro tanto* all inconsistent laws. Being in force in precinct No. 5 in Meade county, it at the same time deprived the appellant of the protection his license would otherwise have given him, and relieved him from liability to the penalty denounced by the statute relative to taverns and tippling houses. If he has violated the local option law, he should have been prosecuted and punished under its provisions, and consequently had a right to have the fine against him fixed by the jury at not less than $25.00, nor more than $100.00, instead of having it fixed by the court at $60.00, as prescribed by the general law."

In Gifford v. Commonwealth, 2 K. L. R. 437, it was held that a section in the charter of the town of Falmouth, passed by the legislature in 1878, granting the council of that town the power to license and regulate the sale of liquors, operated as a repeal of the general local option law then in force, because repugnant thereto and inconsistent therewith. So, too, in the later case of Tabor v. Lander, 94 Ky. 237, it was held that where the general local option law had been voted into operation in a civil district of which a city formed a part, an amendment to the city charter conferring for the first time authority on the city council to license taverns and coffee houses with the privilege of retailing liquor in the city, repealed the local option law so far as the city was concerned. The decision was rested on the ground that the authority conferred on the council to license and regulate the sale of liquors was inconsistent with the general local option law, and indicated a clear intent to repeal or suspend the operation of that law. There is no reason, of course, why the rule should not work both ways. In other words, if the granting of power to a municipal corporation to li-

cense and regulate the sale of intoxicating liquors has the effect of repealing the local option law, then the adoption of a state prohibition act, prohibiting the sale of intoxicating liquors except for specific purposes and under conditions therein set forth, and purporting to be the whole law on the subject, will necessarily have the effect of repealing a license statute which confers the privilege of sale under circumstances and conditions wholly at variance with the provision of the prohibition law. In reaching this conclusion we do not mean to hold that the state may not, under its police power, impose a license fee on druggists who sell under the new restrictions and conditions imposed by the prohibition acts, but merely hold that the old license statute is no longer in force.

As the statute imposing the license fees had been repealed, it necessarily follows that the fees in question were no longer due and collectible, and having been paid by mistake, it was the duty of the auditor to refund them, and upon his refusal to do so, appellee was entitled to a mandamus requiring the auditor to issue a warrant in his favor. Section 162, Kentucky Statutes; Greene v. Taylor, Jr. & Sons, 184 Ky. 739, 212 S. W. 925.

Judgment affirmed.

Whole court sitting.