## Coleman, Auditor of Pubic Accounts, et al. v. Inland Gas Corporation.

(Decided June 21, 1929.)

(As Modified, on Denial of Rehearing, December 20, 1929.)

638

J. W. CAMMACK, Attorney General, CLIFFORD E. SMITH, Assistant Attorney General, and EARL R. COOPER for appellants.

H. H. RAMEY for appellee.

Opinion of the Court by Judge Logan—Reversing.

Appellee paid to the county court clerk of Mago'fin county the tax provided for in section 4019a9, Carroll's Ky. Stats., 6th Edition, which section is section 9 of chapter 11 of the Acts of 1917, and is commonly referred to as the Mortgage Recording Tax Act. The constitutionality of this statute was declared by this court in the case of Middendorf v. Goodale, 202 Ky. 118, 259 S. W. 59, and in the case of Louisville Gas & Electric Co. v. W. H. Shanks, Auditor of Public Accounts, 213 Ky. 762, 281 S. W. 1017. The Supreme Court of the United States, however, declared the unconstitutionality of the act in the case of Louisville Gas & Electric Co. v. Clell Coleman, Auditor, 277 U. S. 32, 48 S. Ct. 424, 72 L. Ed. 770.

After the decision of the Supreme Court appellee demanded of the county court clerk of Magoffin county a refund of the money which had been paid to him under the provisions of the statute declared unconstitutional. The clerk refused to refund and advised that the money paid to him by appellee had been forwarded to the auditor of public accounts of the state of Kentucky, except 5 per cent., the compensation to the clerk provided by the act. Demand was made on the auditor by appellee, and the refund was denied by the auditor upon the advice of the Attorney General. This suit was instituted in the Franklin circuit court seeking a mandatory injunction against the appellant, requiring that he

draw his warrant in favor of appellee for the money so paid to the county court clerk of Magoffin county, or that he be required to draw his warrant for that portion of the money actually passing into the state treasury, and that the county court clerk of Magoffin county who was made a party be required to refund the 5 per cent. retained by him. The chancellor overruled a demurrer to the petition. The Attorney General declined to plead further, and judgment was rendered in favor of appellee in accordance with the prayer of its petition.

The petition alleged a state of facts that would authorize a recovery. upon the principle announced by this court in the case of Craig, Auditor, v. Frankfort Distilling Co., 189 Ky. 616, 225 S. W. 731, and two or three opinions subsequently delivered by this court following that case. The pronouncement of the court in that case, which is regarded as sound law by counsel for appellee, is as follows: ''On a more mature consideration of the question, the whole court sitting and concurring, we have reached the conclusion herein expressed, and hold that the auditor should in every case where it appears to him that money has been paid into the treasury as taxes when none were due, either through mistake, inadvertence, misapprehension of the law, or under a void or unenforceable statute, issue his warrant upon the treasury in favor of the payor of the money, reimbursing him in the full sum thus paid in.''

The quotation from that opinion above given sounds well, and carries a high moral tone, and, if the court adheres to the principle of law thus stated, the appellee, and others, whether the claim be a few dollars or a few million dollars, may demand and receive a refund of money paid as taxes when no such taxes were in fact due, although such tax was paid voluntarily and without any notice to the state that it might be called upon at some time in the future by the taxpayer to make a refund.

It is admitted by counsel for appellee that Judge Cooley correctly stated the general application of the law which should govern in such matters in volume 2, page 1496, of his work on taxation to the effect that money voluntarily paid as taxes could not be recovered back when he said: ''The principle is an ancient one in the common law, and is of general application.'' If there may be no refund of taxes paid when no taxes were due under the general principles applicable under the common law, there can be no such taxes refunded by a

government except pursuant to a statute enacted repealing, or modifying, the common-law rule. An examination of many statutes, and the decisions of courts construing them, shows that all state governments have been slow indeed to open the doors of their treasuries and allow money to pass therefrom after it has once found lodgment within the governmental vaults. This is as it should be. The state is the sovereign, and its affairs must be conducted for the best interest and welfare of the people. That calls for the expenditure of large sums of money for governmental affairs, and such sums of money can be obtained only through taxation. The state should determine the amount which it will spend by the probable income which it will receive. When the income is collected it is allocated to different funds. The state uses the fund nearly always during the current year. It has been universally held, unless a contrary conclusion was forced by an ironclad statute, that no taxpayer should have the right to disrupt the goverment by demanding a refund of his money whether paid legally or otherwise, unless the sovereign was made to know at the time the money was paid that the taxpayer would insist that the money should be refunded to him. If such acts were done as to indicate that the taxpayer did not pay the tax voluntarily, and this fact was brought home to the sovereign and in fact no tax was due, or should have been paid, the taxpayer, under some statutes, may have a refund of the money so paid. But the general rule is, in states where a refund is authorized, that money voluntarily paid as taxes to the sovereign may not be recovered by the taxpayer, although no tax was due and he may have defeated the payment if he had stood upon his rights and contested the authority of the government to exact the tax.

The only authority for refunding taxes paid when no such taxes were in fact due is found in section 162, Ky. Stats. That section as it now appears is the act of February 27, 1893. The material part of the section reads thus: "When it shall appear to the Auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same."

This section is a re-enactment of the act of 1854 (Pub. Acts 1854, c. 848) which as far as is material was in this language: "That when it shall appear to the Au-

ditor of Public Accounts, that money has been paid into the public treasury for taxes, when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same.''

The first act relating to the matter of refunding money paid into the state treasury for taxes when no such taxes were due was enacted January 23, 1813, and is found in Morehead and Brown Ky. Stats., volume 1, page 185. This act was restricted in its terms. The preamble set out that in some instances by mistake the auditor transmits to the register of the land office the same tract of land in different names for the collection of tax due thereon and as the result such tax is twice paid, and at other times taxes are sometimes charged when none were due and that the auditor was without authority to remedy the error. The act was to take care of the difficulties mentioned in the preamble. The auditor was authorized and directed to issue his warrant on the treasury for the money which had been twice paid, or improperly paid. It is from the act of 1813 that we get the proviso now found in section 162.

A citation of the numerous cases would but fill space, and the leading cases on the subject are referred to and some of them overruled in the case of Craig, Auditor, v. Security Producing & Refining Co., supra, and opinions in subsequent cases following that case. It is sufficient to say that the construction of the statute had been uniform prior to the last-cited case in so far as it related to the question of the right of the taxpayer to have taxes paid, when no such taxes were due, refunded to him. In all cases it had been held that taxes voluntarily paid could not be recovered. The definition of what was meant by ''voluntary'' was enlarged and broadened from time to time, but the rule was never departed from that the voluntary payment of taxes, although no taxes were due, left the taxpayer remediless. The rule was well stated in the case of Louisville & N. R. Co. v. Com., 89 Ky. 531, 12 S. W. 1064, 11 Ky. Law Rep. 734. In that case the railroad company had paid taxes under a mistake of law. It sought to obtain a credit on its next year's taxes for the amount which it had paid the previous years when the taxes, or some part thereof, were not due for the previous years. The court stated the correct rule in the following language: ''It is a general rule that a *voluntary* payment by the taxpayer leaves

him remediless. If, however, distraint or a summary mode of collection may be adopted, then the payment will not be regarded as voluntary, and the taxpayer may sue to recover taxes collected without legal authority. A distinction is to be taken between cases where their collection can be enforced summarily, and those where resort must be had to the courts. In the one case the taxpayer must submit to a levy upon his property or pay the money. In the other he has the opportunity to contest the demand in court, and if he does not choose to do so, and voluntarily pays it, he is remediless. Considerations of public policy require this rule, and the taxpayer cannot complain with grace, because he has, by his own neglect, missed the opportunity afforded him by law for his protection.'' The opinion in that case related to taxes paid for the year 1882.

After the opinions quoted from, the court in cases almost too numerous to mention adhered to the rule that taxes voluntarily paid into the treasury could not be recovered back.

To quote from another case illustrating the rule followed by this court for many decades, that is, the case of German Security Bank v. Coulter, Auditor, 112 Ky. 577, 66 S. W. 425, 427, 23 Ky. Law Rep. 1888, where the court in construing section 162 of the Statutes said: ''The primary intention of the statute was to authorize the auditor to refund to officers who collected taxes due the State, and paid more into the treasury than was in fact due from them. It was not intended to authorize the auditor to correct assessments made of the property of taxpayers, and refund the amounts he may determine are due them; for the statutes clearly provide whose duty it is to make assessments of property, how they may be corrected, and the time in which it may be done. The auditor is not the official upon whom the law confers such authority.

In the case of Couty v. Bosworth, Auditor, 160 Ky. 312, 169 S. W. 742, the court again construing section 162, after quoting from the case of German Security Bank v. Coulter, Auditor, supra, said: ''This seems to us, to be a sound principle. We do not believe that the Legislature ever intended to enact a law that would permit any person who thought he had been required to pay a greater amount of taxes than he thought to be due, or to pay taxes on property that he considered exempt, or even to pay taxes to the sheriff or collect-

ing officer of a county, through mistake, to appear before the Auditor of Public Accounts and require him to take up and pass upon the merits of the claim; and then if it appeared to him that the tax had been improperly paid to draw his warrant on the Treasurer for the amount appearing to him to be due the claimant.''

In the brief filed by counsel amici curiae in behalf of appellee it is said:

"By cases decided prior to November 16, 1920, the date Craig v. Security Producing & Refining Co. was decided the Court had read into section 162 limitations which the language of that section did not justify. Three of such limitations are as follows:

"(1) '. . . Taxes paid to counties, cities, towns and county officers, collecting the State's revenues and other collecting officers, if the taxes are voluntarily paid, they can not be recovered although not due, and paid under a mistake of law.' Greene, Auditor, v. Taylor, Jr., & Sons, 184 Ky. 739, 745, 212 S. W. 925, 928.

'(2) '. . . the primary purpose of the statute was to empower and authorize the Auditor to correct mistakes made by those whose duty it is to collect the public revenues of the State, when they have paid money, for taxes collected, to the treasurer, when same was not due from them.' Louisville Gas & Electric Co. v. Bosworth, 169 Ky. 824, 830, 185 S. W. 125, 128.

"(3) Taxes voluntarily paid cannot be recovered under Section 162. Taxes 'are deemed to be voluntarily paid when they can be recovered (collected?) only by an action in a court and when the delinquent has an opportunity for his day in court. The rule is, that when the collecting officer may distrain for the taxes and they are paid, the payment is not deemed to be voluntary.' Louisville Gas & Electric Co. v. Bosworth, 169 Ky. 824, 830, 831, 185 S. W. 125, 128.''

It is argued by counsel amici curiae that the limitations placed on the meaning of the plain language of section 162 in the older cases were not justified by any known canon of construction. To this we cannot agree. The construction placed upon that section in the older cases, many of which were very recent at the time they

were overruled, was in accord with sound public policy, and the great weight of the authority throughout the nation. The departure from the rule so announced in the case of Craig, Auditor, v. Security Producing & Refining Co., supra, was not justified. If the doctrine of stare decisis has any place in jurisprudence it should have been applied when the attack was made upon the long line of cases prior to 1920. At all events we have concluded to go back to the principles announced in those cases with the modification hereinafter noted, and, in so far as the cases of Craig, Auditor, v. Security Producing & Refining Co., supra, Craig v. Frankfort Distilling Co., 189 Ky. 616, 225 S. W. 731, and Craig, Auditor, v. Renaker, 201 Ky. 576, 257 S. W. 1018, announce a different rule, they are hereby overruled. If there is any other case holding that taxes voluntarily paid may be recovered back under the provisions of section 162, Ky. Stats., it is unsound and will not be followed.

In the cases of City of Louisville v. Beckley, 139 Ky. 17, 129 S. W. 311, 28 L. R. A. (N. S.) 1045; German Security Bank v. Coulter, Auditor, supra; Couty v. Bosworth, Auditor, supra, in so far as it was held that the primary intention of the statute was to authorize the auditor to refund to officers who collect taxes due the state, or, where it has been held that the statute was solely for the benefit of officers collecting taxes, the opinions are unsound and to that extent are overruled. There seems to be no distinction between the right of a collecting officer and the right of an individual taxpayer to have relief under the statute. If a taxpayer, whether a collecting officer or an individual, pays money which finds its way into the state treasury in the way of taxes, when no such taxes were due, and the money so paid was not the voluntary act of the taxpayer, he may have relief.

The court in the opinion of Craig, Auditor, v. Security Producing & Refining Co., supra, overlooked one universal principle governing the construction of statutes. That principle is that, when a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written in it originally. Lilly v. O'Brien, 224 Ky. 474, 6 S. W. (2d) 715, and authorities therein cited. The court in the case of Craig, Auditor, v. Security Producing & Refining Co., without ignoring that principle, had no authority to consider alone the language of the statute. There is another principle which apparently

was overlooked or ignored by the court in that case, and that rule has universal application, and is to the effect that when a statute has been construed by the court of last resort of a state, and the same is substantially re-enacted, the construction of the court is carried into the re-enacted statute. The statute of 1854 was almost identic with the statute of 1893. The latter was a re-enactment of the former. 25 R. C. L. page 1075, thus states the rule which governs in such cases: "It is a settled rule of statutory construction that when a statute or a clause or provision thereof has been construed by the court of last resort of a state, and the same is substantially re-enacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the act, or the rules of statutory construction have been changed. This principle is applicable to statutory provisions which have been incorporated in codes after they have been judicially construed. It is not necessary that a statute should have been literally re-enacted to authorize the presumption that it was re-enacted in the light of the settled judicial construction that the prior enactment had received. The presumption has been indulged in case of a statute that applies a settled procedure to a new subject matter. The re-enactment by Congress, without change, of a statute which has previously received a long continued executive construction, is an adoption by Congress of such construction.''

There is an imposing array of authorities cited in the note to this text fully supporting the statement that such is the settled rule of construction. We find that this court has positively announced the same doctrine. Greene, Auditor, v. Louisville R. Co., 184 Ky. 90, 211 S. W. 418; Wonder Blue Gem Coal Company v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732.

The appellee in this case voluntarily paid the tax under the facts alleged in the petition. If it desired to test the matter, our Code afforded a remedy immediate and effective. If the clerk of the Magoffin county court had refused to record the mortgage without the payment of the taxes, appellee may have sought an injunction to compel him to accept and record the mortgage without the payment of the statutory taxes. It is true that this court had upheld the validity of the act. If the appellee accepted the construction of this court and paid the taxes, the payment was voluntary. If it desired to save

the point, it may have sought an injunction against the clerk, and, although it may have been denied, yet it could not be said thereafter that the payment of the taxes was voluntary.

It is argued that it is a violation of the federal Constitution to deny a return of this tax. We disagree with that argument. There is no federal question involved.

The 5 per cent. retained by the county clerk was but a part of the tax and cannot be recovered if voluntarily paid.

Judgment reversed, and cause remanded, with directions to sustain the demurrer to the petition.

Whole court sitting.

### DISSENTING OPINION BY JUDGE CLAY.

At an early day the courts were so imbued with the theory that the common law was the perfection of reason that it was difficult to get them to give any effect to a statute enacted for the sole purpose of changing the common law. Animated by this spirit of reluctance, the court gave two constructions to what is now section 162, Kentucky Statutes—one to the effect that it did not apply to taxes voluntarily paid, and the other that it applied only to public officers and not to taxpayers. It is true that after the two constructions the Legislature re-enacted the statute, but its action cannot be regarded as adopting one of these constructions rather than the other. Being confronted by this situation the court reconsidered the question in Greene v. Taylor, Jr., & Sons, 184 Ky. 739, 212 S. W. 925; Craig, Auditor, v. Security Producing and Refining Co., 189 Ky. 565, 225 S. W. 729; Craig, Auditor, v. Frankfort Distilling Co., 189 Ky. 616, 225 S. W. 731, and Craig, Auditor, v. Renaker, 201 Ky. 576, 257 S. W. 1018, and decided to construe the statute as written. In the case of Craig v. Frankfort Distilling Co., supra, the court, after overruling all opinions to the contrary, announced its conclusion in the following language: "On a more mature consideration of the question, the whole court sitting and concurring, we have reached the conclusion herein expressed, and hold that the auditor should in every case where it appears to him that money has been paid into the treasury as taxes when none were due, either through mistake, inadvertence, misapprehension of the law or under a void or unenforceable statute, issue his warrant upon the

treasury in favor of the payor of the money, reimbursing him in the full sum thus paid in.''

The reason for this conclusion is to be found in the statute, which reads as follows: "Sec. 162. When it shall appear to the auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same. Nothing herein contained shall authorize the issuing of any such warrant in favor of any person who may have made payment of the revenue tax due on any tract of land, unless it is manifest that the whole of the tax due the commonwealth on such land has been paid, independent of the mistaken payment, and ought to be reimbursed.''

The statute plainly provides for the refunding of taxes *"when no such taxes were in fact due."* There is not a proviso, or a sentence, or a clause, or a phrase, or a word, or a syllable, or even a punctuation mark that in any way qualifies or limits the effect of the language used. Instances may arise where a statute is so unintelligible that words must be inserted to give it effect, but that rule does not apply where there is no doubt as to the meaning of the statute. Here the language is direct, certain, clear, explicit, unequivocal, and unmistakable in meaning. I doubt if there can be found among the statutes of Kentucky, or the statutes of any other state, or the statutes of the United States, a statute whose meaning is as clear as the one under consideration. The majority opinion does not attempt to show that its language is susceptible of any construction other than that given in Craig, Auditor, v. Security Producing & Refining Co., supra. It rests entirely on the erroneous construction therefore placed on the statute, and contents itself with saying that the contrary opinions are unsound and work a hardship on the commonwealth. How an opinion construing a statute can be unsound when it gives to its language the only meaning of which it is susceptible is not explained and cannot be explained. The alleged hardship is wholly chimerical and without foundation in fact. It is a matter of common knowledge that taxes paid involuntarily or under protest are never set aside in a special fund to await the decision of their legality. On the contrary, they are distributed by the state just as taxes paid voluntarily and without protest. Hence the situation of the state is precisely the

same, whether the taxes are protested or not. That being true, there is no ground for the distinction, and therefore no reason for disregarding the statute.

Other courts, though recognizing the common-law rule, give effect to statutes intended to work a change. In Indiana, New York, and Iowa it is held under statutes no more emphatic than ours that the taxpayer may recover taxes erroneously or illegally exacted or paid, although paid voluntarily and without protest. Indianapolis v. Morris, 25 Ind. App. 409, 58 N. E. 510; People v. Madison County, 51 N. Y. 442; Slimmer v. Chickasaw County, 140 Iowa, 448, 118 N. W. 779, 17 Ann. Cas. 1028. Indeed, the Supreme Court of Errors of Connecticut, where there is no statute on the subject, in announcing the rule that taxes are recoverable, if paid under mistake of law or fact, in case the payor is under no legal obligation to make payment and payee in good conscience has no right to retain it, said: "It has long been the law of this state that, 'where a person pays taxes that are illegally imposed upon him whether paid by compulsory process or not, he may recover back the money.'" Bridgeport Hydraulic Co. v. Bridgeport, 103 Conn. 249, 130 A. 164, 168.

Further, in dealing with the ground which in part is relied on in the majority opinion as the reason for ignoring the statute and reaffirming the earlier decisions on the subject, that court said: "The defendant says that because it has not the identical money it received from the plaintiff it should not be required to return it. It claims as a principle of law that, because it has spent the money, received no matter how wrongfully or unconscionably from the plaintiff, it cannot now be recovered back. The mere statement of such a proposition seems to be a sufficient refutation of it. Where a party receives money from another which in equity and good conscience it ought not to keep, it cannot, by spending it, escape the liability to repay it. The law reaches further than to the identical coins and bills which are received. The defendant city is not the agent of the taxpayers. It is the inhabitants, including the taxpayers, acting under a charter as a municipal corporation with perpetual existence. As such corporation it has acted, levied the tax, and received the money. It has no shadow of right in good conscience to retain the money so paid. The plaintiff brought the action as soon as it discovered the error. Neither the mistake of the plaintiff in paying, nor the good faith

of the defendant in receiving, nor the fact that the money has been spent, gives the defendant any equitable right to retain the money.''

A gentleman will not retain money that does not belong to him. The statute was enacted to enable the commonwealth to be a gentleman. Because of the great number of constitutional and legal restrictions, it is not often that such an opportunity comes to the commonwealth, and the statute should not be construed so as to drag it down from that high estate. Feeling that he should contribute his share to the support of the government, and believing that the government will do the fair and honorable thing in case the taxes are declared to be illegal, a good citizen usually pays his taxes promptly and voluntarily. For this he is penalized by a construction that does violence to the statute, while the taxpayer whose voice of protest rings loudest in the corridors of the courthouse or state capitol is made the sole object of the law's tender solicitude.

But, were the construction of the statute less doubtful, we should hesitate now to change the rule. Uncertainty is the bane of the law. We should not have one rule for one case and a different rule for another case, where the facts in each are precisely the same. The law should not change with the personnel of the court. It should be fixed and certain, to the end that the citizens may regulate their affairs accordingly. As will be seen from the quoted language, the whole court in the case of Craig v. Frankfort Distilling Co., supra, which was decided in the year 1920, solemnly declared that, in every case where it appeared to the auditor that money had been paid in the treasury under a void or unenforceable statute, he should issue his warrant upon the treasury in favor of the payor of the money, and overruled all prior cases holding that taxes could not be recovered, unless paid involuntarily or under protest. Appellee and other taxpayers similarly situated had the right to rely on that opinion, and to govern their actions accordingly. This appellee did, and now it finds itself deprived of a recovery because it failed to take steps which that opinion declared to be unnecessary. Clearly, the necessity for changing so fair and just a rule is not so great as to justify the resultant hardship which appellee and others will be called on to bear.

In addition to this it seems to me that the taxpayer's remedy, prescribed in the concluding paragraph of the

650

opinion, is worse than the disease. It says in substance that, if appellee desired to test the matter, it could have done so by seeking a mandatory injunction requiring the county clerk to record the mortgage without the payment of the tax, and, if denied relief, it thereafter could not be said that the payment was voluntary. Even if that be true, the other consequences would have been equally, if not more, serious than the voluntary payment of the tax. Such an action would have involved the constitutionality of the statute and the legality of the tax, and, it being conceded that our courts would have denied relief, the judgment would have been conclusive, and have precluded appellee from relitigating these questions and recovering the tax, although the United States Supreme Court thereafter held the statute unconstitutional and the tax invalid in an action brought by another taxpayer.

For these reasons I am impelled to dissent from the majority opinion.

I am authorized to say that JUDGE WILLIS concurs in this dissent.