CASE 45.—ACTIONS BY THE LOUISVILLE PROPERTY COMPANY AGAINST THE WENDER BLUE GEM COAL COMPANY AND THE MORGAN-GARDNER ELECTRIC COMPANY AND SARAH J. CHILTON.—March 1, 1910.

# Wender Blue Gem Coal Co. v. Louisville Property Co.
## Morgan-Gardner Electric Co. v. Same
## Chilton v. Same

Appeals from Whitley Circuit Court.

M. J. Moss, Circuit Judge.

From a judgment for plaintiffs, defendants appeal.

Affirmed in part and reversed in part.

1. Landlord and Tenant—Lease—Validity.—A stipulation in a lease providing for its forfeiture for nonpayment of rent is valid.

2. Mines and Minerals—Lease—Forfeiture—Equitable Relief.—Where the lessee in a coal mining lease, stipulating for its forfeiture for nonpayment of rent failed to pay rent, and was insolvent, and it was doubtful whether the mine developed by the lessee at a large expense could be so operated as to pay rent, and liens were asserted against the property, equity properly terminated the lease at the suit of the lessor, though equity may relieve against a forfeiture where circumstances justify it.

3. Chattel Mortgages—Sale or Mortgage—Validity as Against Purchasers or Creditors.—A contract of sale stipulating that the title shall remain in the seller until the price is paid is a mortgage, and is not valid against purchasers for value or creditors unless recorded.

4. Mortgages—Validity—After-Acquired Property.—A mortgage of property to be acquired in the future is void against the mortgagee's creditors or purchasers for value.

5. Landlord and Tenant—Lien of Landlord—Extent—After-Acquired Property.—The lien created by a recorded lease

340    KENTUCKY·REPORTS.    [Vol: 137.

Wender Blue Gem Coal Co. v. Lou. Prop'ty Co.—Chilton v. Same.

stipuulating that the lessor shall have a lien on the fixtures, personal property, and improvements for the rent does not attach to property subsequently acquired by the lessee and placed on the premises as against the creditors of the lessee.

6. Chattel Mortgages—Priority—Lien of Landlord—Extent—"All Valid Liens."—The words "all valid liens" in Ky. St. Sec. 2316, providing that all valid liens on the personalty of a lessee created before the property was carried on the premises shall prevail against a distress warrant for rent, means such liens as are valid under section 496, providing that no mortgage shall be valid against a purchaser for. value without notice or against creditors until the same is acknowledged and lodged for record, and a mortgage on the personalty of a lessee which is not recorded is not valid against the landlord who is a creditor.

7. Statutes—Construction—Re-enactment of Former Statutes.— Where the Legislature substantially re-enacts a statute after it has received a judicial construction, the law presumes that the Legislature re-enacted it in view of such construction.

8. Landlord and Tenant—Liens—Discharge—Failure to Enforce. —Under Ky. St. Secs. 2316, 2317, providing that, where a lien is created on the personalty of the lessee while on the premises, a distress warrant for one year's rent shall have precedence if sued out in 120 days from the maturity of the rent, and giving the landlord a superior lien for not more than one year's rent, nor for any rent which has been due for more than 120 days, where rent is payable quarterly, the landlord has no superior lien for rent which has been due for more than 120 days.

9. Landlord and Tenant—Lien—Enforcement.—A landlord suing to enforce his lien for unpaid rent and to terminate the lease for nonpayment of rent, and obtaining an injunction restraining the disposition of the property on the premises, need not take out a distress warrant or attachment to preserve his lien.

10. Landlord and Tenant—Rent—Discharge From Liability—Injunction.—Where the landlord in a lease stipulating for the payment of rent quarterly and for the forfeiture of the lease for nonpayment of rent elected to terminate the lease for nonpayment of rent, and enjoined the lessee from disposing of the property on the premises, and thereby cut it out of the power of the lessee to operate the premises, rent must stop on the filing of the petition, but the landlord was entitled to rent from the date of the last quarterly payment to the date of the filing of the petition.

11. Landlord and Tenant—Chattel Mortgages—Mortgage of Leasehold—Termination of Lease—Priority as to Chattels.— Where the tenant's estate in the land terminated by the forfeiture of the lease for nonpayment of rent, a mortgagee of the tenant mortgaging his leasehold interest and the personal property on the premises had no right as to the land or things on it which passed with it, but had a lien on the personalty in the absence of any facts defeating such lien.

12. Chattel Mortgages—Assignments by Lessee—Estoppel.— Where a mortgage of a leasehold interest and the property on the premises was acknowledged by one of the two lessees, and the lessees obtained money from the mortgagee for a company on the representation contained in the mortgage that the lease had been assigned to the company, the lessees were estopped to deny the assignment, and the mortgage was binding, as to the personalty on the premises.

13. Estoppel—Persons Estopped—Purchasers.—Where a mortgage of a leasehold interest and the personal property on the premises, acknowledged by one of the two lessees, recited that the land was leased to the lessees, and was conveyed by them to a company by an unrecorded conveyance, the company was estopped from denying an assignment.

14. Landlord and Tenant—Liens—Rights of Creditors of Tenant. —A lessor having a superior lien for rent unpaid must first exhaust the property on which other creditors of the lessee have no lien.

15. Chattel Mortgages—Liens—Priority.—A mortgage executed by a lessee subsequent to the recording of the lease, stipulating that rent shall be a lien on the property of the lessee on the premises, gives a lien superior to the lien retained in the lease as to all personal property, which was on the premises when the mortgage was given, and was not thereon at the date of the lease.

W. R. HENRY and E. L. STEPHENS, for appellant Wender Blue Gem Coal Co.

E. L. STEPHENS and I. N. STEELEY for appellant Chilton.

FAULKNER & SHARP, for appellant Morgan-Gardner Electric Co.

CHAS. H. MOORMAN, H. H. TYE and BENJAMIN D. WARFIELD, for appellee Louisville Property Co.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

342 KENTUCKY REPORTS. [Vol. 137.

Wender Blue Gem Coal Co. v. Lou. Prop'ty Co.—Chilton v. Same.

On April 25, 1904, the Louisville Property Company leased to S. A. Wender and Morris Wender, for a term of 25 years, the exclusive right to mine and remove coal from a tract of land lying in· Whitley county, Ky., containing 89 acres. The lease was duly recorded in the county clerk's office, and on November 4, 1905, was assigned by the lessees to the Wender Blue Gem Coal Company, on condition that it abide by and perform all the conditions and stipulations of the lease. The assignment was consented to in writing by the Louisville Property Company, and this consent was also recorded. On August 27, 1903, the Louisville Property Company leased to G. B. Powers & Co., for a term of 25 years, the exclusive right to mine and remove coal from a tract of land lying in Whitley county, Ky., containing 105 acres. The lease was duly recorded in the county clerk's office, and on February 1, 1906, G. B. Powers & Co. in writing surrendered to the Louisville Property Company all their rights under it. The written surrender was accepted by the Louisville Property Company, and was duly recorded. Thereafter, on February 20, 1906, the Louisville Property Company leased the same tract of land for the same purposes to the Wender Blue Gem Coal Company. The lease from the Louisville Property Company to S. A. and Morris Wender for the 89-acre tract contained the following clauses as to the rent:

"The lessees covenant and agree to pay the lessors, for the use and enjoyment of the premises hereby leased, for the purposes aforesaid, irrespective of the amount of coal mined, a certain yearly rental of seven hundred dollars ($700.00) payable in quarterly installments of one hundred and seventy-five dollars ($175.00) each at the office of the lessor, in Halsey,

Kentucky, or as the lessor may direct, fifteen (15) days after the end of each quarter for which the rent is due, the first quarterly installment to become due and payable fifteen months and fifteen days after the date hereof, but subject to credits by royalties paid per following clauses, if said royalties for any quarter be less than said certain rent.

"(2) The lessees further covenant and agree to pay the lessor for all coal mined on or removed from said premises and not coked a royalty of eight (8) cents for each ton of 2,000 pounds; a royalty of fifteen (15) cents for each ton of 2,000 pounds of coke made and used on or removed from said premises; and a royalty of 25 cents (25c) for each ton of 2,000 pounds of cannel coal mined and used on or removed from said premises; and on the fifteenth (15th) day after each quarter year in which the coal is mined or coke made, to pay, at the office of the lessor in Halsey, Kentucky, or as it may direct, to said lessor or order, the amount of said royalty due for said preceding quarter, less the amount of the quarterly installment of certain rent as provided for in the preceding paragraph of this lease; but in any event the certain rent as provided for in the preceding paragraph of this lease must be paid in full. No royalty shall be charged on coal actually used by the miners in their cottages on said premises.

"(3) An annual accounting shall take place during the first week in May in each year, beginning in 1906, and if it shall appear that the lessees shall have paid to the lessors more than seven hundred dollars ($700.00) for the year ending April 25th previously, and if it shall further appear that during any quarter of that year the royalties did not amount to the fixed rent of one hundred and seventy-five dollars

344 KENTUCKY REPORTS. [Vol. 137.

Wender Blue Gem Coal Co. v. Lou. Prop'ty Co.—Chilton v. Same.

($175.00) and provided that the payment of the certain rents and royalties have been made promptly on or before the fifteenth day after each quarter as specified, then the lessee shall have credit for the difference between the certain rent of one hundred and seventy-five dollars ($175.00) and the royalties for said quarter or quarters; provided, always, that such credits shall be so limited in amount as not to reduce the minimum sum of seven hundred dollars ($700.00) for such year ending April 25th, previously, and such credits shall be allowed on the payment of royalties during the next year for quarters for which the royalties exceed the minimum quarterly rental of one hundred and seventy-five dollars ($175.00). .

"(4) The lessees further covenant and agree to furnish to the lessor, within ten (10) days from the first day of each month, at the office of the lessor in Halsey, Kentucky, or as it may direct a report in a form that shall be satisfactory to the lessor, showing the number of tons mined and used on or removed from said premises during the preceding month.

"(5) The lessees further covenant and agree that all the rents and royalties herein agreed to be paid, shall be deemed and considered as created for rents of land and shall be a lien on this leasehold and the fixtures and improvements thereon and on the personal property of the lessees, and on the coal mined from, and on the coke made on, said premises for twelve (12) months after said rents and royalties fall due and until the termination of any suit commenced within that time for said rents and royalties.

"(6) The lessees further covenant and agree to keep full and accurate accounts, in suitable books, of all coal mined from, and coke made on, said premises,

and said books, accounts, data and memoranda to be kept at all reasonable times open to examination by the lessor, its attorney or agents.    * * *

"(22) The lessees further covenant and agree that should the lessees fail to pay the rents and royalties, or either of them, provided for, at the time and place hereinbefore specified, and shall continue in such default for sixty (60) days thereafter, then this lease shall, at the option of the lessor, be forfeited and become null and void, and all rights and privileges of the lessees hereunder, shall at once cease and determine, and the lessor or its officers, agents or assigns, may thereupon enter and take possession of said premises, with the appurtenances, in the same manner and to as full an extent as said lessor might or could do at the expiration of the full term of this lease as herein provided. And the lessees hereby waive notice of the lessor's intention to terminate this lease, as well as all demands for the unpaid rents and royalties, or either of them."

The lease from the Louisville Property Company to G. B. Powers & Co. contained the same stipulations as to the rent of the 105-acre tract. The contract between the Louisville Property Company and the Wender Blue Gem Coal Company as to this tract provided that the land was leased to the Blue Gem Coal Company on the same terms as in the lease to Powers & Co., with the exception that the minimum annual rental for this tract should be $600, and should not begin to accrue until January 1, 1907. On May 24, 1909, the Louisville Property Company brought this action against the Wender Blue Gem Coal Company charging in the petition that the lessee had failed to pay the rent as it fell due, and that there was due it on account of rent $3,615.26; that the default in the

payment of the rent had continued for more than 30 days after written notice specifying the default had been served upon the defendant. The plaintiff asked that the lease be terminated. The defendant filed answer, proof was taken, and the court on final hearing on July 6, 1909, entered a judgment terminating the leases. From this judgment the coal company appeals.

The proof shows that the coal company had spent something like $30,000 in developing the mine, and in putting in tracks, tipples, and other improvements. It is insisted for it that the lease is a one-sided, harsh contract, and that the forfeiture of the lease should not be enforced. On the other hand, it is clearly shown from the evidence that the coal company has operated the mine at a loss, that it is insolvent, and it is very doubtful if the mine can be so operated as to pay the rent or make a profit. The contract provides that the lease may be terminated if the rent is not paid. Such contracts are common and are universally upheld. While a court of equity will relieve against a forfeiture on account of the nonpayment of rent where circumstances are shown justifying the interposition of the chancellor, the court cannot make for the parties a different contract than they have made for themselves. The rent here is long past due, no tender of the amount due is made, and what the future would bring forth as to a profit being made in the operation of the mine is purely speculative. The tenant is insolvent, and other liens are asserted on the property. We cannot under such circumstances say that the chancellor erred in terminating the lease. 24 Cyc. 1352; Taylor on Landlord and Tenant, sec. 495; Wilson v. Jones, 1 Bush, 173.

On the appeal of the Morgan-Gardner Electric Company the facts are these: The Morgan-Gardner Electric Company on August 20, 1906, agreed to sell the Wender Blue Gem Coal Company certain machinery of the value of $6,455.50. In the written contract it stipulated that the title and ownership of the property should remain in the Morgan-Gardner Electric Company until it was paid for. The machinery was shipped in October, 1906, and on its arrival at Halsey was immediately placed upon the premises and installed. The coal company paid the freight, paid some interest on the notes which it executed, and a little of the principal. The written contract under which the property was sold and in which it was stipulated that the title was to remain in the Morgan-Gardner Electric Company was not recorded; but on September 25, 1907, or about a year after the property had been placed upon the premises, the coal company executed to the Morgan-Gardner Electric Company a mortgage on the machinery which was put to record four days thereafter. The Morgan - Gardner Electric Company in this action asserted a prior lien on the machinery, and also asserted its title to the machinery under the written contract between it and the coal company. The circuit court adjudged the Louisville Property Company a superior lien on this machinery for $1,300, a year's rent on the premises. Of this the Morgan-Gardner Company complains.

While contracts by which property is sold, with the stipulation that the title is to remain in the seller until it is paid for, are enforced in some states, the rule in Kentucky has long been that such contracts are mortgages, and are not valid against purchasers for value or creditors unless recorded.

Greer v. Church, 13 Bush, 430; Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146, 9 Ky. Law Rep. 836; Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205, 20 Ky. Law Rep. 84; Star Drilling Machine Company v. McLeod, 122 Ky. 564, 92 S. W. 558, 29 Ky. Law Rep. 84. By the fifth clause of the lease above cited, it is provided that the lessor shall have a lien on the fixtures, personal property, and improvements for the rent. This paper was duly recorded; but the property obtained from the Morgan-Gardner Electric Company was subsequently acquired. And it is settled that a mortgage of property to be acquired in future is void against the mortgagee's creditors or purchasers for value. Manly v. Bitzer, 91 Ky. 596, 16 S. W. 464, 13 Ky. Law Rep. 166, 34 Am. St. Rep. 242; Patterson v. Louisville Trust Company, 30 S. W. 872, 17 Ky. Law Rep. 234; Robinson Norton Co. v. Woodward, 48 S. W. 1082, 20 Ky. Law Rep. 1142. The rights of the parties therefore turn on the landlord's lien for rent under the statute which so far as material is as follows: "All valid liens upon the personal property of a lessee, assignee, or under-tenant, created before the property was carried upon the leased premises, shall prevail against a distress warrant or attachment for rent. If such lien be created whilst the property is on the leased premises, and on property upon which the landlord hath a superior lien for his rent, then to the extent of one year's rent, whether the same accrued before or after the creation of the lien, a distress or attachment shall have preference, and be first satisfied, provided the same is sued out in one hundred and twenty days from the time the rent was due." Ky. St. sec. 2316 (Russell's St. sec 4574). "A landlord shall have a superior lien on the produce of the farm or premises rented, on the fixtures, on the

household furniture, and other personal property of the tenant, or under-tenant, owned by him, after possession is taken under the lease; but such lien shall not be for more than one year's rent due, or to become due, nor for any rent which has been due for more than one hundred and twenty days." Ky. St. sec. 2317 (Russell's St. sec. 4574). It will be observed that by section 2316 all valid liens upon the personal property of the tenant created before the property was carried upon the leased premises shall prevail against a distress warrant or an attachment for rent.    It is insisted for the Morgan-Gardner Electric Company that it had a valid lien on the machinery before it was carried upon the premises. What the statute means by a valid lien must be determined by reading section 2316 in connection with section 496, Ky. St. (Russell's St. sec 2062): "No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed shall be acknowledged or proved according to law, and lodged for record."    It will be observed that, by section 496, the lien is not valid against bona fide purchasers or against creditors unless recorded or lodged for record; and, when in section 2316 the words, "all valid liens," are used, such liens must be meant as are valid under other provisions of the statutes.    The landlord is a creditor, and a lien which would not be valid against other creditors is not a valid lien against him.

It will also be observed that by section 2316, if the lien is created while on the leased premises, then to the extent of one year's rent, due or to become due, a distress or attachment shall have precedence pro-

350 KENTUCKY REPORTS. [Vol. 137.

Wender Blue Gem Coal Co. v. Lou. Prop'ty Co.—Chilton v. Same.

vided the same is sued out in 120 days from the time the rent was due. Section 2317 further provides that the landlord shall have a superior lien, but that such lien shall not be for more than one year's rent, due or to become due, nor for any rent which has been due for more than 120 days. The present statutes are the same as those heretofore in force, except that in section 2316 the time for suing out a distress or attachment is limited to 120 days, and in the previous statutes this was limited to 90 days. In Gedge v. Shoenberger, 83 Ky. 91, the tenant had made a mortgage upon property upon the rented premises and the contest was between the mortgagee and the landlord; the landlord insisting that he was entitled to the superior lien for one year's rent, although the rent had been due more than 120 days. The court held the mortgage superior to the landlord's claim as to all rent which became due more than 90 days before the distress warrants were issued, although the distress warrants were issued within 90 days after the expiration of the rental year. The question was again before the court in Petry v. Randolph, 85 Ky. 351, 3 S. W. 420, 9 Ky. Law Rep. 14. In that case the tenant had made an assignment for the benefit of his creditors; and the landlord took out a distress warrant for rent which had been due less than six but more than four months. The court held that he had lost his lien. Among other things the court said: "Aside from the statute the landlord has no lien. At the common law he had no right to distrain after the lease or term had ended. By it he could only seize property for rent then accruing 3 Blackstone, p. 11. It is a summary proceeding, born of the statute, and should not be extended in scope by construction. The Legislature

has given the landlord a preference, but has not absolved him from vigilance. To guard against collusion between him and his tenant, and to prevent the latter from obtaining false credit, it has given him a lien and a summary mode of enforcing it, provided he does so within a certain period. As between him and the tenant he may distrain within six months; but, where the rights of third parties intervene, the statute has reduced the right to a more narrow limit, and the landlord must comply with it strictly, or lose his right.'' Since the construction of the statute in those cases it has been re-enacted by the Legislature without any change except that indicated of substituting 120 days for 90 days in section 2316, and it must be presumed that the Legislature re-enacted it in view of the construction which it had received. Under the statute as thus construed, the landlord has no superior lien for any rent which has been due for more than 120 days. In this case the rent was payable quarterly. As to all quarterly payments which had been due more than 120 days, the landlord had no superior claim for rent. The lease for the 89-acre tract was dated April 25, 1904. The first quarterly installment fell due in 15 months and 15 days after the date of the lease, or on August 9, 1905. The next installment was due on November 9th; the next on February 9th. Under the lease for the other tract the rental did not begin to accrue until January 1, 1907. The first installment of the quarterly rent under this lease fell due on April 1, 1907. When the action was brought on May 28, 1909, there were but two quarterly installments of rent which had fallen due within 120 days. All the prior installments had been due for more than 120 days. The plaintiff brought the action to enforce its lien for the rent and to terminate

the contract. The property on which the lien was asserted was described in the petition, and an injunction was granted restraining the defendant from disposing of the property. When such an action was filed, it was unnecessary for the plaintiff to take out a distress warrant or attachment to preserve its lien. Loth v. Carty, 85 Ky. 591, 4 S. W. 314, 9 Ky. Law Rep. 131; Meyer v. Gaertner, 106 Ky. 481, 50 S. W. 971, 21 Ky. Law Rep. 52, 45 L. A. R. 513; Brown v. Noel, 52 S. W. 849, 21 Ky. Law Rep. 648. The plaintiff, having elected to terminate the lease, and having enjoined the defendant from disposing of the property in contest, put it out of its power to operate the leased premises, and therefore the rent should stop on the filing of the petition; for clearly the defendant should not be required to pay royalties after the plaintiff had enjoined it in this case. The plaintiff is entitled to rent, though, from the date of the last quarterly payment up to the date of the filing of the petition, and the taking out of the injunction, but the rent should then cease. The court erred in adjudging the plaintiff a superior lien for the rent beyond the two quarterly installments which had fallen due within 120 days before the suit was filed, and the rent from that time to the filing of the suit. To this extent the judgment is erroneous as to the Morgan-Gardner Electric Company.

Sarah J. Chilton tendered her petition which was filed and taken as her answer. In this petition she showed that she had lent the Wender Blue Gem Coal Company on October 16, 1905, $2,263.50, for which it executed to her its notes and a mortgage to secure them on the leasehold interest it then held in the 89-acre tract; also on the equipment, implements, mules, tools, and property of every kind owned by it

on said premises.   The mortgage among other things
recites that the land was leased to S. A. Wender and
Morris Wender April 25, 1904, and was conveyed by
them to the coal company October 16, 1905; but that
this conveyance had not been recorded.   The mort-
gage was acknowledged on October 19, 1905.   It is
said in the briefs that the circuit court disregarded
Mrs. Chilton's claim for the reason that her mort-
gage was executed before the assignment by the
Wenders to the coal company.   But the mortgage re-
cites the contrary, and no issue was made in the cir-
cuit court on this question.   A reply was filed to her
answer, but it was not pleaded therein that the mort-
gage was given before the coal company had ac-
quired the property.   The court should not under
the pleadings have disregarded her claim.   In so far
as her mortgage covers the land, or the things on the
land which passed with it, the tenant's estate in the
land having terminated, she can have no relief; but
as to the personal property which was on the prem-
ises when the mortgage was given she is entitled to
a lien, unless facts are shown sufficient to defeat her.
The mortgage was acknowledged by S. A. Wender.
If he and Morris Wender obtained from her the
money for the coal company representing in the
mortgage that they had assigned the property to it,
they are estopped to deny the assignment had been
made.   The act of S. A. Wender as to the personalty
on the premises binds the firm.   The coal company is
also estopped by the recitals of the mortgage to deny
the assignment had been made.   So there was an as-
signment of the property when the mortgage was
given either by deed or by estoppel, and in either
case she did not take a mortgage on after-acquired
property.   The record is not so presented that we

vol. 137—23

can determine now what property Mrs. Chilton's lien, if she has one, covers. On the return of the case the Louisville Property Company will be allowed to amend its reply to Sarah J. Chilton's answer. The interest of all the parties require that the property should be sold without further delay; and, on the return of the case to the circuit court, he will order the property which did not pass to the lessor upon the termination of the lease all sold, and have the bonds for the price taken payable to the commissioner for such purposes as the court may thereafter adjudge; or, if the parties consent, he may hear the evidence orally and summarily determine whether Mrs. Chilton has a lien, and, if a lien, what it covers, and enter a judgment settling the rights of the parties, and ordering a sale of the personal property.

The court did not err in adjudging that the Louisville Property Company as to its superior lien for rent must first exhaust the property on which the Morgan-Gardner Electric Company had no lien before resorting to the property on which it has a lien. The same principle should be applied in favor of Sarah J. Chilton if she is adjudged to have a lien on any of the property under her mortgage. Sarah J. Chilton for the reasons we have given has no lien on any personal property acquired by the Wender Blue Gem Coal Company after the execution of her mortgage, and she therefore has no lien on the machinery on which the Morgan-Gardner Electric Company asserts a lien. By the recorded lease between the Louisville Property Company and the Wenders it was stipulated, among other things, that the rent should be a lien on the personal property of the lessees on the premises. Mrs. Chilton's mortgage was taken subsequently, but her mortgage lien, if valid, is su-

perior to the contract lien retained in the lease as to all personal property which was on the premises when the mortgage was given and was not thereon at the date of the lease.

On the appeal of the Wender Blue Gem Coal Company the judgment is affirmed. On the appeal of the Morgan-Gardner Electric Company and Sarah J. Chilton, the judgment is reversed and cause remanded for further proceedings consistent herewith.