This is an appeal by subtenant from a judgment ordering it to vacate the property and awarding landlord possession, $14,000 in rental, and title to permanent improvements. We affirm.
In 1973, Daylin, Inc., the lessee of property owned by landlord ("Jopat"), operated thereon a discount store under the name "Miller's." In 1974, Daylin sublet a portion of the property to subtenant ("USA"). (The lease neither forbade a sublease nor required the lessor's approval.) The sublease contained a provision notifying USA that Daylin was not the owner of the leasehold premises, but was a lessee. USA proceeded to operate a self-service gasoline station on the property and undertook the remodeling of the existing station. The remodeling was completed on February 21, 1975, at a cost to USA of $82,016.12.
On February 26, 1975, Daylin filed a Chapter XI Bankruptcy Proceeding in the United States District Court for the Central District of California.
On March 4, 1975, Jopat sent a letter by certified mail, return receipt requested, to Daylin, notifying it that its rental payment for March 1975 was past due and demanding immediate payment. The letter expressly reserved all Jopat's "rights and remedies arising because of other breaches of said lease."
On March 14, 1975, Daylin paid the past-due rent. Jopat accepted the payment and regarded it as curing the default referred to in the letter of March 4. When Jopat accepted the rent, it was aware that the Chapter XI petition had been filed.
On March 24, 1975, Jopat sent a second letter to Daylin notifying it that, because of Daylin's filing of the Chapter XI petition, Jopat was electing to re-enter and take possession of the property. The letter also stated:
 ". . . Pursuant to the provisions of the said lease, we may, from time to time, without terminating the said lease, relet the said demised premises, or any part thereof. Such re-entry shall not be construed as an election on our part to terminate the said lease. Under Section 15.2 of said lease, such repossession shall not release you of your liability and obligations under said lease, all of which shall survive such repossession. . . ."
On March 25, 1975, Jopat sent a letter by certified mail, return receipt requested, to USA notifying it of Daylin's default under the master lease and requesting it to contact Jopat regarding negotiation of a new lease. On April 21, Jopat notified USA by letter that USA was deemed a trespasser as of April 1, when Daylin's lease was "terminated." *Page 503 
Jopat did not take possession of the property leased to Daylin on April 1. On May 9, however, Daylin wrote Jopat that it was surrendering possession of the property and further that the lease would be rejected in the Bankruptcy Court. That rejection occurred on August 21.
USA remained in possession of the service station property and tendered to Jopat the rent under the sublease as it fell due. Jopat did not receive the rent, but insisted that the sublease was forfeited and demanded that a new lease be executed providing for an average base monthly rental of $2,475. The base monthly rental under the sublease was $1,000. The trial court found that the reasonable rental value of the premises was $1,000 per month.
When the parties failed to negotiate a new lease, Jopat sent a letter, dated May 1, to USA notifying it that it was not to remove any permanent improvements made on the leasehold premises. In June 1975, Jopat filed suit in circuit court for possession of the premises, for a permanent injunction against removal of permanent improvements, and for unpaid rent. The trial court entered judgment for Jopat. USA appeals.
1. USA's principal contention is that the only manner in which the estate and rights of a subtenant can be forfeited is by the landlord's declaring the master lease forfeited for a default under the terms of the master lease and that the evidence clearly shows that Jopat expressly elected not to forfeit the master lease. Jopat maintains the trial court correctly held that USA's rights were terminated by Jopat's election to re-enter as indicated by its March 24 letter to Daylin declaring its intention to re-enter. This caused a forfeiture of Daylin's, and consequently USA's, rights in the premises.
Upon the happening of one of the events of default specified in the lease, Jopat had the right, under the lease, to choose either of the following options:
 "(1) To give Lessee written notice of intention to terminate this lease on the date of such delivery of notice or on any later date specified therein; and on the date specified in such notice Lessee's right to possession of the premises shall cease and this lease shall thereupon be terminated; or
 "(2) Without demand or notice to reenter and take possession of the Demised Premises, or any part thereof, and repossess the same as of Lessor's former estate therein and expel Lessee and those claiming through or under Lessee, and remove the effects of both or either (forcibly, if necessary) without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or preceding breach of covenants. Should Lessor elect to re-enter as provided in this paragraph (2), or should Lessor take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Lessor may, from time to time, without terminating this lease, relet the Demised Premises, or any part thereof, for such term or terms and at such rental or rentals and upon such other terms and conditions as Lessor may deem advisable, with the right to make alterations and repairs to the Demised Premises. No such re-entry or taking of possession of the Demised Premises shall be construed as election on Lessor's part to terminate this lease unless a written notice of such termination be given to Lessee or unless said termination be decreed by a court of competent jurisdiction." [Emphasis supplied.]
As noted already, Jopat, by its letter of March 24, chose the second option — re-entry without termination of the lease. It appears that, by means of this provision in the lease, Jopat was attempting to retain the right to terminate the lessee's rights without terminating the lessee's obligations under the lease. We do not find it necessary to decide whether Jopat's election accomplished that result, because the lessee's obligations are not at issue in this case. At issue are the lessee's and the sublessee's rights.
It seems clear to us that both the first and second options have the same effect on *Page 504 
the rights of the lessee and those claiming through him. Under both options, they lose their right to possession.
Consequently, Jopat's letter of March 24 was notice to Daylin that Jopat was forfeiting Daylin's right to possession under the lease. As a sublessee, USA's right to possession was subject to the terms and conditions of Daylin's lease. Thesublessee could stand no higher than the lessee from which its right derived. Brock v. Desmond Co., 154 Ala. 634, 45 So. 665
(1908). Consequently, forfeiture of Daylin's right to possession resulted in forfeiture of USA's right to possession. Because Daylin's right to possession had been forfeited, Daylin's surrender of possession to Jopat was not a voluntary surrender. Thus, it was not an infringement on the rights of USA, the subtenant, but was merely a surrender of possession to which Jopat was entitled. Brock v. Desmond Co.,154 Ala. at 636, 45 So. 665. The remedy of the subtenant for its eviction is confined to its immediate lessor (the lessee) upon covenants in the sublease for quiet enjoyment. Brock v. Desmond Co., supra.
2. USA further contends that Jopat's acceptance of rent for the month of March 1975 with knowledge of Daylin's filing a Chapter XI petition waived Jopat's right to declare a forfeiture by reason of the filing of the petition. The trial court found, as Jopat contends, that there was no waiver because Jopat, in its letter of March 4, expressly reserved all rights that it might have to forfeit or terminate the lease or to re-enter the premises for defaults other than the overdue rent. USA responds that acceptance of rent with knowledge of an act of insolvency operates as a waiver of default despite attempted reservations of the right to terminate.
We have been unable to find any Alabama case which treats the precise question raised here. Cases from other jurisdictions are not in agreement. Some give effect to such reservations; others do not. See 49 Am.Jur.2d, Landlord and Tenant, § 1068; Anno., 109 A.L.R. 1267, 1287.
Our Alabama case of Dahm v. Barlow Co., 93 Ala. 120,9 So. 598 (1891), is cited by USA, but is not in point. Dahm held that a party cannot, by declarations after the acceptance of rent, explain his intention in accepting it. Jopat's reservation of rights and remedies arising from other breaches was made before it accepted payment of the overdue rent.
We have been impressed by the reasoning and rationale of ReWil-low Cafeterias, Inc., 95 F.2d 306, 115 A.L.R. 1184 (2d Cir. 1938). Upon authority of that case, we hold that Jopat's reservation of rights and remedies for other breaches, in its letter demanding payment of the overdue rent, permitted it to accept payment of the overdue rent without waiving its right to declare a default for Daylin's insolvency.
In Wil-low, the court stated:
 "Waiver is always a matter of intent and, while an intent to waive may be inferred from the acceptance of rent under certain circumstances, such an inference may be rebutted and is rebutted here by the express agreement between the parties that the rent was paid and accepted without prejudice. Such an agreement was incorporated in the leases. The fourth paragraph quoted provided that `the receipt of rent with knowledge of any breach, shall not be deemed to be a waiver as to any breach of any covenant or condition herein contained.' Thus, notwithstanding knowledge of a breach of condition, the appellant might accept rent without being deemed to waive its right to terminate for such breach. . . ."
 ". . . The nonwaiver clauses . . . are equivalent to an express agreement at the time of the payment that such payment was without prejudice." [Emphasis supplied.]
95 F.2d at 309.
In the present case, the nonwaiver stipulation was not contained in the lease agreement, but was part of the March 24 letter demanding payment of overdue rent. This distinction between Wil-low and the present case is a distinction without a difference, *Page 505 
for Wil-low treats a nonwaiver clause in a lease agreement the same as an agreement at the time of payment.
Daylin's payment of the overdue rent without objection to the nonwaiver provision in the notice letter amounted to consent to the nonwaiver provision and resulted in an agreement at the time of payment that acceptance of payment was without prejudice to Jopat's rights and remedies arising because of other breaches.
3. Finally, USA contends that, even if Jopat lawfully effected a forfeiture of the master lease, equity should refuse to enforce the forfeiture against it as a subtenant under the facts of this case. The circumstances upon which USA relies are its having completed remodeling of the service station only five days prior to Daylin's filing of the petition and Jopat's attempt to extract rents from USA substantially in excess of the provisions of the sublease and the reasonable rental determined by the trial court. In a similar vein, USA contends that granting Jopat title to the permanent improvements would be unjust enrichment and that Jopat should be required to compensate USA for the improvements.
The trial court found that USA failed to prove any fraud, mistake, undue influence, coercion, or duress that would entitle it to an equitable claim to compensation for or removal of the permanent improvements. The court further found that USA made the improvements with knowledge, actual or constructive, of Jopat's rights under the lease with Daylin and that Jopat never had knowledge, actual or implied, of the improvements until after the bulk of the improvements had already been made.
As a general rule, equity will relieve against the forfeiture of a lease for nonpayment of rent on the theory that the covenant for such forfeiture is intended merely as security and will be relieved against on payment of rent due and any damages sustained by the lessor. Relief, however, will not ordinarily be granted against forfeiture arising from a breach of covenants other than the covenant to pay rent, because no exact compensation can ordinarily be made for other breaches. SeeCesar v. Virgin, 207 Ala. 148, 149, 92 So. 406 (1921). See also 49 Am.Jur.2d, Landlord and Tenant, § 1078.
 "The question whether a court of equity should relieve against a forfeiture under a provision of a lease authorizing its termination by the lessor in the event of the insolvency, bankruptcy, or receivership of the lessee, either by taking affirmative action or by refusing to enforce such a provision, has arisen in several cases. Where there was no fraud or wrong, courts have refused to enjoin a lessor from taking possession of the premises on the bankruptcy of the lessee, under a provision of the lease that in case of the insolvency or bankruptcy of the lessee, the lessor might terminate it and recover the premises. A bankruptcy court has said, however, that it would refuse, as a court of equity, to enforce a forfeiture under circumstances where it would be inequitable to a sublessee, whom the lessor had approved, and where there could be no injury to the lessor, since the sublessee was financially responsible and had offered to give satisfactory security. . . ." [Emphasis supplied.]
[Footnotes omitted.] 49 Am.Jur.2d, Landlord and Tenant, § 1084. See also Anno., 115 A.L.R. 1189, 1199, supplemented in 168 A.L.R. 504, 511.
The case cited for the last sentence of the above quotation is Re Larkey, 214 F. 867 (D.C.N.J. 1914). The facts of Larkey
are significantly different from the instant case. As mentioned above, the subtenant in Larkey had been approved by the lessor. In the present case, however, Jopat had not approved the sublease to USA, because the lease did not require Jopat's consent to a sublease. Further, the subtenant in Larkey
subleased the entire premises under provisions identical to those in the original lease and for the same amount of rent. In the present case, USA subleased only a portion of the premises covered by the master lease and at a rental agreed to by Daylin. The court in Larkey was able to protect the *Page 506 
rights of the sublessee without substantially affecting the rights of the lessor, since the lessor was getting from the sublessee (whom he had approved) exactly what he had contracted to receive from the lessee. The circumstances of the present case are entirely different. If this Court were to relieve USA from the forfeiture of the lease, Jopat would be forced by the Court into a contract not of its own making. Jopat agreed neither to the amount of the subrental nor to the terms and conditions of the sublease.
For this reason and also because there has been no proof of fraud, mistake, undue influence, coercion, or duress, this is not a proper case in which to grant relief from the forfeiture of the lease or the sublease.
We agree with the trial court that USA, having failed to prove fraud, mistake, undue influence, coercion, or duress, is not entitled to compensation or restitution for improvements.Hewett v. McGaster, 272 Ala. 498, 501, 133 So.2d 189 (1961).
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
JONES, ALMON, EMBRY and BEATTY, JJ., concur.