This is an appeal by Southwest Village Water Company from an order of the trial court quieting title in Walton Fleming, et al., to a parcel of land located in Madison County, Alabama. We affirm.
The appellees in this case are the owners of the fee simple interest in the property that is the subject of this suit. In 1960, the appellees and their predecessors in title granted a long term (55-year) lease of the property. When the lease was executed, *Page 90 
no permanent improvements existed on the property. Paragraph 5 of the lease authorizes the construction of permanent improvements on the property and states that the lessee will operate "a high class motel" on the property. Paragraph 6 of the lease allows title to the improvements to be held by the tenant until the expiration of the lease, and paragraph 8 of the lease permits the assigning, sub-leasing, and mortgaging of the leasehold. The lease provides, in paragraph 10, that the lessee will maintain all improvements on the premises in good condition and repair. Paragraphs 15 and 16 of the lease state that prior to termination of the lease for default by the lessee, the lessor will give the lessee notice of default together with a specified time in which to cure the default. However, no rights to cure upon default are given in the lease to any holder of a lien on the leasehold estate.
Between March 1960 and April 1979, the leasehold was assigned, mortgaged, deeded, and otherwise encumbered and transferred between and among numerous parties. Throughout this period certain permanent improvements were placed upon the property to permit the operation of a motel. On April 4, 1979, all right, title, and interest to the leasehold, free from any outstanding encumbrance or obligation, was held by KLM Construction Company, Inc. (KLM), a Missouri Corporation. On April 5, 1979, at 9:34 a.m., a deed from KLM to Geneva Ann Johnson was recorded, and, at 9:36 a.m., that same day, a purported mortgage from KLM to Geneva Ann Johnson was recorded. On the same day, April 5, 1979, at 3:01 p.m., a deed to the leasehold from KLM to Terry E. Graham was recorded, and, at 3:06 p.m., an assignment of the lease from KLM to Terry E. Graham also was recorded. Terry E. Graham executed a mortgage to Joe G. Sanders, giving the leasehold and its improvements as security, which by order of a Texas district court, as affirmed by the Texas Court of Appeals, was later assigned to River and Beach Land Corporation. River and Beach Land Corporation, by an instrument dated February 16, 1981, then assigned its interest in the note and mortgage to appellant, Southwest Village Water Company, Inc. (Southwest).
In October 1980, purportedly due to the deterioration and extreme disrepair of the improvements on the lease property, the appellees, pursuant to the applicable provisions of the lease, gave notice of termination to the then-lessee. In April 1981, the appellees again gave notice of termination to the succeeding lessee, Chulavista Land Investment Company, Inc. (Chulavista). When no repairs were undertaken within the time allowed by the lease and by the notice of termination, the appellees instituted an adversary proceeding against Chulavista in the United States Bankruptcy Court for the Southern District of Mississippi, where Chulavista had filed a petition for reorganization. The Bankruptcy Court, in August 1981, entered an order terminating the lease and awarding immediate possession of the property to the appellees.
The appellees then proceeded to initiate a quiet title action against numerous defendants, including appellant, Southwest Village Water Company, Inc., on March 8, 1982, alleging that the termination of the lease in the bankruptcy proceeding extinguished all claims or liens held by any of the defendants in the leasehold. Prior to trial, judgment was entered in favor of plaintiffs-appellees and against all defendants, other than Southwest, for various reasons. The case proceeded to trial between plaintiffs-appellees and defendant Southwest. The facts of the case were stipulated at trial by the parties, including the fact that Southwest had never been a lessee under the lease. Furthermore, both parties agreed that Southwest's sole claim of any interest in the property was by virtue of an unrecorded assignment to it in February 1981 of a purported mortgage on the leasehold estate, which mortgage was previously given by Terry E. Graham to Joe G. Sanders.
The stipulations indicate that the issues to be determined by the trial judge were: (1) Did Southwest hold a valid mortgage on the leasehold estate? (2) Did the termination *Page 91 
of the lease by the United States Bankruptcy Court extinguish any interest that Southwest might have held in the leased property?
The trial judge found in favor of plaintiffs-appellees on both issues and entered a final judgment declaring that appellant, Southwest Village Water Company, Inc., had "no right, title or interest in or to the real estate . . . subject to the [lease]." Southwest appeals to this court alleging that the trial court erred in its determination of both issues. We do not agree.
Southwest's basic argument, on appeal, is that, assuming it held a valid mortgage on the leasehold, the order of the United States Bankruptcy Court terminating the lease did not entitle appellees to a judgment by the Madison County Circuit Court forfeiting Southwest's interest in the property, since Southwest did not receive notice of the impending forfeiture or adversary proceeding, was not made a party to the proceeding, and was not given an opportunity to protect its mortgage by correcting the violations of the lease conditions.
The question of whether a mortgagee of a leasehold estate has any rights in the leased property upon termination or forfeiture of the lease has not directly been addressed in Alabama. Furthermore, the authority from other jurisdictions on this point is sparse.
Our Alabama case of U.S.A. Petroleum Corporation v. JopatBuilding Corporation, 343 So.2d 501 (Ala. 1977), which reaffirms various principles set out in Brock v. Desmond Company, 154 Ala. 634, 45 So. 665 (1908), lends guidance to the question at hand.
The issue in U.S.A. Petroleum was whether a sublessee retained any rights in the leased property upon forfeiture of the lease by the original lessee. The court stated that the sublessee's right to possession of the property was subject to the terms and conditions of the lease and that "[t]he sublessee could stand in no higher position than the lessee from whichits rights derived." 343 So.2d at 504 (citing Brock, supra)
(emphasis added). Consequently, the forfeiture of the lessees' rights in the property necessarily resulted in the forfeiture of the sublessees' rights. Id. The court further stated that "[t]he remedy of the subtenant for [the surrender of its rights] is confined to its immediate lessor (the lessee) upon covenants in the sublease." Id. (citing Brock, supra.)
An analogy of U.S.A. Petroleum to the case at bar leads us to the conclusion that the forfeiture of the lease against the lessee (Chulavista) worked a forfeiture of the rights of the lessee's mortgagee (Southwest) in the leased property.
When the long term lease was forfeited against the principal lessee (Chulavista), any rights that Chulavista had in the property were extinguished. It follows that since Southwest's rights were derived from the rights held by Chulavista, Southwest could stand in no higher position than Chulavista. Therefore, any rights that Southwest may have in the leasehold property were, by necessity, also extinguished.
The remedy for a mortgagee in this situation would be against the mortgagor according to the terms of the mortgage and subject to the lessor-fee owners' rights in the property. Under the facts of this case, it seems obvious that Southwest should assert any rights and should pursue any remedies it may have against Chulavista in the United States Bankruptcy Court.
To hold as the mortgagee in the present case urges, i.e., that Southwest be allowed to assume the position of the lessee and cure the default in the lease, this court would be giving rights to Southwest that it is not afforded under the lease. We would be forcing appellees, the lessors, to adhere to a contract not of their own making, and this the court will not do. Furthermore, the limited amount of authority from other jurisdictions that have addressed the issue of the rights of the mortgagee of a leasehold upon termination or forfeiture of the lease is in accord with our present holding. See Law CenterInc. v. Trust Company of North America, 84 N.Y.S.2d 577, (N.Y.Sp. Term 1948); Third National Bank *Page 92 Trust Company of Scranton v. Lehigh Valley Coal Company,353 Pa. 185, 44 A.2d 571 (1945); City of Chicago v. Salinger,384 Ill. 515, 52 N.E.2d 184 (1944); Bowen v. Selby, 106 Neb. 166,183 N.W. 93 (1921); Wender Blue Gem Coal Company v. LouisvilleProperty Company, 137 Ky. 339, 125 S.W. 732 (1910); Abrahams v.Tappe, 60 Md. 317 (1883).
In view of our holding that any rights Southwest may have held in the leased property were extinguished upon forfeiture of the lease, it is unnecessary to determine whether Southwest held a valid mortgage on the leasehold under the facts of this case. We, therefore, pretermit discussion of that issue.
It should be noted, however, that in its appeal, Southwest contends that even if the master lease was lawfully forfeited against it, equity should refuse to enforce the forfeiture against the mortgagee under the facts of this case. Again, we think U.S.A. Petroleum, supra, to be dispositive of this issue. In U.S.A. Petroleum, 343 So.2d at 505, we stated:
 "As a general rule, equity will relieve against the forfeiture of a lease for nonpayment of rent on the theory that the covenant for such forfeiture is intended merely as security and will be relieved against on payment of rent due and any damages sustained by the lessor. Relief, however, will not ordinarily be granted against forfeiture arising from a breach of covenants other than that covenant to pay rent, because no exact compensation can ordinarily be made for other breaches. See Cesar v. Virgin, 207 Ala. 148, 149, 92 So. 406 (1921). See also 49 Am.Jur.2d, Landlord and Tenant, § 1078." (Emphasis added.)
In the instant case, the lease was terminated due to breach of covenants to keep the premises in good repair, and not for nonpayment of rent. Also, a determination of an exact amount that would compensate the lessors for the breaches asserted would be difficult, if not impossible. Relief for the mortgagee from forfeiture, therefore, is not warranted in this case.
We have reviewed the record and briefs in this case. Finding no error in the lower court's ruling, we affirm.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.