TAGGART GLOBAL OPERATIONS,
LLC, Appellant

v.

The ELK HORN COAL COMPANY,
LLC; Nautilus Capital Markets, Ltd.;
and Goose Creek Energy, Inc., Appel-
lees.

and

Nautilus Capital Markets,
Limited, Appellant

v.

The Elk Horn Coal Company, LLC;
Goose Creek Energy, Inc.; Uriah Be-
ment Coal, Inc.; and Taggart Global
Operations, LLC, Appellees.

Nos. 2012–CA–000329–MR,
2012–CA–000369–MR.

Court of Appeals of Kentucky.

Aug. 2, 2013.

Modified and Ordered Published
Oct. 25, 2013.

C. Bishop Johnson, Pineville, KY, for appellant Taggart Global Operations, LLC.

Denise H. McClelland, Lexington, KY, for appellant Nautilus Capital Markets, Ltd.

William S. Kendrick, Prestonsburg, KY, for appellee The Elk Horn Coal Company.

Before DIXON, MOORE and TAYLOR, Judges.

## OPINION

DIXON, Judge:

Taggart Global Operations, LLC and Nautilus Capital Markets, Ltd appeal from a summary judgment order of the Floyd Circuit Court determining the priority of all parties' respective interests in the remaining property of Goose Creek Energy, Inc., including a coal preparation plant, scales and scale house, miscellaneous personal property and storage buildings (collectively the "plant"), as well as any salvageable coal previously mined on the site either in a refuse pile or elsewhere on the grounds. After reviewing the record and applicable law, we affirm in part and dismiss in part.

Appellee, Elk Horn Coal Company, owns the land upon which the plant is located. In March 2005, Elk Horn entered into a lease with McPeek Energy for certain coal mining properties and reserves for the purpose of mining and extraction of coal. In June 2007, McPeek assigned the lease to Goose Creek Energy. Pursuant to the lease, Goose Creek's payments were due by the 20th of each month. In August 2009, Goose Creek began failing to make regular payments. Elk Horn formally declared Goose Creek in default on June 29, 2010, and subsequently cancelled the lease effective July 13, 2010.

On September 7, 2010, Elk Horn filed an action against Goose Creek in the Floyd Circuit Court seeking (1) rent due under its lease pursuant to a landlord lien against the personal property and equipment, as well as a request for a writ of attachment; (2) termination of the lease with Goose Creek; and (3) a declaration that certain surface leases reverted to Elk Horn. The complaint also named other defendants, including Appellee, Nautilus Capital Markets, who held an interest of record in Goose Creek's assets. On November 5, 2010, Elk Horn obtained a default judgment against Goose Creek for $553,125.63 plus post-judgment interest. Although the judgment determined the total amount owed by Goose Creek to Elk Horn, all issues concerning the validity of its landlord lien or the priority of such in relation to other creditors were reserved for further adjudication.

In June 2011, Appellee, Taggart Global Operations, moved to intervene, claiming valid materialman's and mechanic's liens in Goose Creek's assets. Following additional discovery, Elk Horn, Nautilus and Taggart all filed cross-motions for summary judgment. On January 19, 2012, the trial court entered findings of fact and conclusions of law ruling that Elk Horn held a valid first priority landlord's lien in Goose Creek's personal property for the principal amount of $553,125.63, representing eleven months of rent payments due from Goose Creek. The trial court next determined that Nautilus held a second valid lien in Goose Creek's personal property in the amount of $200,000, which was secured by an October 2009 note, security agreement, and UCC-1 financing statement. The trial court ruled, however, that an additional $400,000 note negotiated in January 2010, was unsecured because the original 2009

security agreement did not contain a future advance clause. Finally, the trial court concluded that Taggart did not hold any valid liens in the property due to a waiver clause contained in the agreement between it and Uriah Bement Coal, Goose Creek's parent company.

On February 20, 2012, Taggart filed a notice of appeal in this Court naming Elk Horn, Nautilus, and Goose Creek as Appellees. Thereafter, on February 24, 2012, Nautilus also filed a notice of appeal naming Elk Horn, Goose Creek, Uriah Bement, and Taggart as Appellees. Only Elk Horn, Nautilus and Taggart have participated in the appeals herein.

Our standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Id.* With that standard of review in mind, we address the validity of each party's claim to the subject assets.

### Elk Horn's Landlord's Lien pursuant to KRS 383.070(1)

It is undisputed that Elk Horn did not record either the initial lease with McPeek or the subsequent assignment of such to Goose Creek. Further, Elk Horn did not file a UCC–1 statement to reflect any security interest in Goose Creek's assets. Thus, Elk Horn's claim to the property is based upon its assertion of a landlord lien pursuant to KRS 383.070, which provides in relevant part:

> (1) A landlord renting premises for farming or coal mining purposes shall have a lien on the produce of the premises rented and the fixtures, household furniture, and other personal property owned by the tenant, or undertenant, after possession is taken under the lease, but the lien shall not be for more than one (1) year's rent due and to become due, nor for any rent which has been due for more than eleven (11) months.
>
> . . . .
>
> (3) If sued out within one hundred and twenty (120) days from the time the rent is due, a distress or attachment for rent secured by a lien under subsection (1) or subsection (2) shall, to the extent of four (4) months' rent, be superior to and satisfied before other liens upon the personal property of a lessee, assignee or undertenant, created while the property is on the leased premises, whether the rent accrued before or after the creation of the other liens. If the rent is for premises leased for coal mining purposes, the superiority given the lien by this subsection shall be to the extent of one (1) year's rent.

KRS 383.030 outlines the procedure for a landlord's attachment of rent:

> (1) If any person is liable for rent due not later than one year thereafter, whether payable in money or some other thing, the person to whom the rent is owing or his agent or attorney may file

an affidavit in the district court if the amount involved is less than $1,500 and otherwise in the Circuit Court of the county in which the tenement lies, stating that there are reasonable grounds for belief, and that he does believe, that unless an attachment is issued he will lose his rent. The court shall then issue an attachment for the rent against the personal property of the person liable for the rent, to any county the person suing out the attachment may desire. But the attachment shall not issue until the plaintiff has given bond, with good surety, to indemnify the defendant should it appear that the attachment has been wrongfully obtained.

(2) Attachments for rent issued shall be returned before the court issuing the attachment. The proceedings thereon shall be the same as on other attachments according to KRS Chapter 425 and the Rules of Civil Procedure.

Count I of Elk Horn's Complaint is styled "Claim and Motion for Attachment of Rent (KRS 383.020, 383.030, and 383.070)" and states:

Plaintiff believes and avers that unless a Writ of Attachment and Distress Warrant is issued for the property including fixtures and improvements, personal property and equipment of the Defendant Goose Creek (the "Property"), that is located upon the Premises, then the Plaintiff will lose all of its rent: such Property will be sold or disposed of with the intent to cheat, hinder, delay the creditors of said Defendants and/or remove beyond the jurisdiction of the Court.

Attached to the Complaint was an itemized list of the property as well as a separate

affidavit for writ of attachment executed by Elk Horn's representative.

There is no dispute, however, that on September 21, 2010, a writ of possession[1] rather than a writ of attachment was issued. Nevertheless, in its summary judgment, the trial court ruled,

Elk Horn's lien [is] proper, as this action was filed September 7, 2010, at which time Elk Horn applied for, i.e. "sued out" a Writ of Attachment, properly supported by affidavit, as to the Plant and personal property of the tenant, Goose Creek. Though a writ of possession rather than a writ of attachment was actually served by the Sheriff, the record supports that the effect is the same here in all material respects. The Defendant was restrained from disposing of the property, and a surety bond posted.... Furthermore, strict compliance with the Writ of Attachment statute is not required for a landlord to preserve its lien. *Wender Blue Gem Coal Co. v. Louisville Property Co.*, 137 Ky. 339, 125 S.W. 732 (1910).

Despite Elk Horn's seeming compliance with the statutory requirements for a landlord lien, Nautilus and Taggart point out that KRS 383.030(2) explicitly states that attachment for rent proceedings "shall be the same as on other attachments according to KRS Chapter 425...." KRS 425.307 sets forth the motion requirements for an order of attachment:

(1) Upon filing of the complaint or at any time prior to judgment, the plaintiff may apply pursuant to this chapter for an order of attachment by filing a written motion for the order with the court in which the action is brought.

---

1. In addition to filing a request for a writ of attachment, Elk Horn also filed a motion for a writ of possession.

(2) The motion shall be executed under oath and shall include all of the following:

(a) The nature of the plaintiff's claim;

(b) That it is just;

(c) The sum which the plaintiff believes he ought to recover; and

(d) The existence of any of the grounds for an attachment set forth in KRS 425.301 or 425.306.

In addition, KRS 425.309(1) provides that "[a]n order of attachment shall not be issued until a bond has been executed by one (1) or more sufficient sureties of the plaintiff in an amount not less than double the amount of the plaintiff's claim."

There is no question that Elk Horn's motion did not state that its claim was "just" as required by KRS 425.307(2)(b). Nor was its $150,000 bond sufficient given its stated claim amount was $553,125.67. In response, Elk Horn argues that the trial court properly held that under *Wender* strict compliance with the writ of attachment statute is not required for a landlord lien, and that if it complied in every other aspect then its claim is certainly "just." The omission of that word, then, should be considered an oversight and not a material defect preventing enforcement of the lien.

The trial court's and Elk Horn's reliance on *Wender* is misplaced. Nowhere within that opinion does the Court actually state that strict compliance with statutory requirements for a writ of attachment is unnecessary for a landlord lien. Instead, the Court noted under the facts therein:

The plaintiff brought the action to enforce its lien for the rent and to terminate the contract. The property on which the lien was asserted was described in the petition, and an injunction was granted restraining the defendant from disposing of the property. When such an action was filed, it was unnecessary for the plaintiff to take out a distress warrant or attachment to preserve its lien. The plaintiff, having elected to terminate the lease, and having enjoined the defendant from disposing of the property in contest, put it out of its power to operate the leased premises, and therefore the rent should stop on the filing of the petition; for clearly the defendant should not be required to pay royalties after the plaintiff had enjoined it in this case.

*Wender*, 125 S.W. at 736 (citations omitted). Thus, the holding in *Wender* was based upon a different procedural posture than that herein in that an injunction had been issued restraining the defendant from disposing of the property. Under such circumstances, "it was unnecessary for the plaintiff to take out a distress warrant or attachment to preserve its lien." *Id.*

Although not articulated by Elk Horn, we are of the opinion that KRS 383.030 provides landlords a more lenient attachment procedure than Chapter 425. KRS 383.030(1) sets forth what the landlord must assert in his petition to warrant a lien. Significantly, subsection (2) provides that **after** an attachment is returned before the court issuing such, the proceedings thereon "shall be the same as on other attachments according to KRS Chapter 425. . . ."

In *Ward v. Grigsby*, 21 Ky.L.Rptr. 1406, 55 S.W. 436, 437 (1900), Kentucky's then-highest Court in addressing the prior landlord lien statutes, held that "[l]andlords suing out an attachment under this provision of the statute are not held to the same strictness of proof as parties proceeding under the Code of Practice, who attach to secure the payment of ordinary debts. *See McLean v. McLean*, 10 Bush 167, 73 Ky. 167 (1873), and *O'Bryan v. Shipp*, 21 Ky.L.Rptr. 1068, 53 S.W. 1034 (1899)."

(Interpreting Ky. St. § 2302). The Court in *McLemore v. Treadway*, 191 Ky. 306, 230 S.W. 56, 56–7 (1921) further explained:

> In *McLean v. McLean*, 10 Bush, 167, it is said that landlords are not held to the same strictness of proof in suing out an attachment under the statute aforesaid as are parties who attach to secure the payment of ordinary debts. The policy of the law being to prefer landlords, the sale or removal from the leased premises of any property bound by the lien is a violation of the landlord's legal rights, and whenever so much of it is removed or is about to be removed without the landlord's consent as to give him reasonable ground to believe the collection of the rent will be endangered, his right to attach accrues. Likewise, when the landlord ascertains that the tenant without his consent is selling or removing any considerable portion of the property upon which he holds a lien, he may proceed to secure himself, and is not bound to wait until there is barely enough property left upon the premises to secure his rent. While the landlord must have reasonable grounds for apprehension, he cannot be compelled to wait until his belief ripens into absolute conviction.

The landlord lien statutes, Ky. St. §§ 2302 and 2303, and the Code of Practice attachment provisions, §§ 196–199, relied upon in the prior cited decisions are substantially similar to those currently enacted. Further, it is clear that under the prior law, landlords were afforded a more lenient procedure than that required for an ordinary attachment. Thus, the only reasonable interpretation of current statutory law is that landlords proceeding under KRS 383.030 are simply not bound by the strict attachment motion requirements of KRS 425.307(2). As such, Elk Horn complied with all necessary requirements to perfect a first valid landlord's lien in the subject property.

■ We also conclude that Nautilus's and Taggart's argument that Elk Horn is only entitled to 120 days or four months' rent is without merit. KRS 383.070(1) grants a coal mining landlord a lien for "rent which has been due" for no more than eleven (11) months. The record reflects that Elk Horn "sued out" on September 7, 2010, which was well within the 120–day requirement of KRS 383.070(3). Accordingly, the trial court's default judgment was for $553,125.63, the amount of rent due to Elk Horn from Goose Creek for the prior eleven months. Although KRS 383.070 provides that a landlord has a superior lien to the extent of four months' rent, subsection (3) explicitly states that "[i]f the rent is for premises leased for coal mining purposes, the superiority given the lien by this subsection shall be to the extent of one (1) year's rent."

Elk Horn is correct that under the formula suggested by Nautilus, Elk Horn would have been required to file suit for each month's rent within four months of its due date. Such an interpretation would effectively require a landlord to obtain three separate judgments (one every four months) for back due rent to secure the one-year lien priority granted under KRS 383.070(3). Such an impractical result is not intended by the statute.

### Nautilus's and Taggart's Liens

■ During the oral argument in this matter, all parties acknowledged that the sale of Goose Creek's assets brought only approximately $50,000. That being the case, Elk Horn is the only lien holder entitled to the proceeds. As a result, all issues regarding Nautilus's and Taggart's liens have necessarily been rendered moot. In *Louisville Transit Co. v. Dep't of Motor*

*Transp.,* 286 S.W.2d 536, 538 (Ky.1956), Kentucky's then-highest court held:

> A moot case is one which seeks a judgment ... upon some matter which, when rendered, for any reason, cannot have any practical effect upon a then existing controversy. As falling within that category it is well established that where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed. (Citations omitted).

A panel of this Court recently reiterated such principle stating, "An appellate court is required to dismiss an appeal when a change in circumstances renders the court unable to grant meaningful relief to either party." *Windstream Kentucky West, LLC v. Kentucky Public Service Comm'n,* 362 S.W.3d 357, 360 (Ky.App.2012). Under the circumstances as acknowledged by all parties herein, we are compelled to find that Nautilus's and Taggart's appeals against each other are moot and no longer justiciable. Accordingly, both appeals must be dismissed.

For the reasons set forth herein, the trial court's judgment in favor of Elk Horn Coal Company, LLC is affirmed. Nautilus Capital Markets, Ltd's appeal against Taggart Global Operations, LLC in 2012–CA–000369–MR, and Taggart Global Operations, LLC's appeal against Nautilus Capital Markets, Ltd in 2012–CA–000329–MR are dismissed.

ALL CONCUR.